RICKENBACKER PORT AUTHORITY, APPELLANT, v.
LIMBACH, TAX COMMR., ET AL., APPELLEES.

[Cite as *Rickenbacker Port Auth. v. Limbach*
(1992), 64 Ohio St.3d 628.]

(No. 91–2327—Submitted June 3, 1992—Decided September 9, 1992.)

*Baker & Hostetler, Edward J. Bernert* and *George H. Boerger*, for appellant.

*Lee I. Fisher,* Attorney General, and *James C. Sauer,* for appellee Tax Commissioner.

*Teaford, Rich, Coffman & Wheeler, Jeffrey A. Rich* and *Karol L. Cassell,* for appellee Groveport Madison Local School District Board of Education.

ALICE ROBIE RESNICK, J. We hold that, under R.C. 4582.46, port authority property leased for more than one year does not qualify for exemption from real property taxes.

R.C. 4582.46 states:

"The exercise of the powers granted by sections 4582.22 to 4582.59 of the Revised Code will be for the benefit of the people of the state, for the improvement of their health, safety, convenience, and welfare, and for the enhancement of their residential, agricultural, recreational, economic, commercial, distributional, research, and industrial opportunities and is a public purpose. As the operation and maintenance of port authority facilities will constitute the performance of essential governmental functions, a port authority shall not be required to pay any taxes or assessments upon any port authority facility, upon any property acquired or used by the port authority under sections 4582.22 to 4582.59 of the Revised Code * * * provided, *such exemption does not apply* to any property belonging to any port authority while a person is a lessee of such property under written lease providing for a tenancy *longer than one year.* * * * *" (Emphasis added.)

RPA does not argue for exemption under R.C. 4582.46, as it had done before the BTA. RPA's assertion to this court is that the property is exempt under R.C. 5709.08 and 5709.121. Specifically, RPA contends that pursuant to the language of R.C. 4582.46, any exercise of the statutory powers set forth in R.C. 4582.22 to 4582.59 is, by definition, for a public purpose. In support, RPA cites the following language in R.C. 4582.46: "The exercise of the

powers granted by sections 4582.22 to 4582.59 of the Revised Code will be for the benefit of the people of the state, * * * and is a public purpose. * * * " Consequently, RPA maintains that any activity it undertakes pursuant to R.C. Chapter 4582 satisfies the conditions set forth in R.C. 5709.08 and 5709.121.

To the contrary, the commissioner and the school board contend that this interpretation of R.C. 5709.08 and 5709.121 would effectively negate the limitation contained in R.C. 4582.46 that property subject to a lease in excess of one year is not entitled to a tax exemption. We agree with appellees.

In *Toledo Business & Professional Women's Retirement Living, Inc. v. Bd. of Tax Appeals* (1971), 27 Ohio St.2d 255, 56 O.O.2d 153, 272 N.E.2d 359, we restricted a statutory tax exemption to property to which the statute specifically applies. At paragraph one of the syllabus, we stated that "[t]he General Assembly has exclusive power to choose the subjects, and to establish the criteria, for exemption from taxation. After the General Assembly has marked a specific use of property for exemption and has established the criteria therefor, the function of the judicial branch is limited to interpreting and applying those criteria."

In *Toledo Retirement*, the taxpayer owned and operated "low-rent retirement living apartments with attendant facilities for aged occupants." *Id.* at 256, 56 O.O.2d at 153, 272 N.E.2d at 360. The taxpayer sought a property tax exemption pursuant to case law applying a general statutory exemption for property operated exclusively for charitable purposes to homes for the aged operated by nonprofit corporations. This court upheld the denial of the tax exemption, holding that the intervening enactment of an exemption specifically for homes for the aged limited the judiciary to applying those statutory criteria. Since that taxpayer did not qualify for exemption under the newly enacted statutory criteria, the exemption was unavailable. Nor could the taxpayer qualify for exemption under the charitable use statute, since its general language could no longer be construed as applying to property for which specific criteria had been established. Hence, we essentially held in *Toledo Retirement* that a property, to be exempt, must qualify under the criteria of the statute specifically applicable to that property. See, also, *Summit United Methodist Church v. Kinney* (1982), 2 Ohio St.3d 72, 2 OBR 628, 442 N.E.2d 1298 (primarily religious institution could not qualify for exemption under statute exempting property belonging to "charitable" institution).

We interpret R.C. 4582.46 to provide the exclusive exemption for property owned by a port authority. On one hand, R.C. Chapter 4582 grants extensive powers to port authorities to develop their property. Yet, R.C. 4582.46 clearly denies the tax exemption for properties owned by port authorities which are

leased for more than one year. If a port authority could exempt its property under a statute other than R.C. 4582.46, the one-year limitation contained therein would have no effect. We decline to render meaningless such a clear legislative restriction concerning tax-exempt property. In summary, R.C. 4582.46 selects port authority property for exemption and establishes the criteria under which exemption may be granted. One of these criteria is that a port authority may not lease its property for more than one year and still claim an exemption. RPA has leased the property for more than one year, and consequently the leased property is no longer exempt from taxation.

Accordingly, while we disagree with the BTA's application of R.C. 5709.08 and 5709.121, we affirm the BTA's decision because R.C. 4582.46 provides the exclusive exemption for property owned by a port authority. Since RPA's lease with D/T is for more than one year and hence does not satisfy R.C. 4582.46, the BTA's denial of a tax exemption was reasonable and lawful, and we affirm the BTA's order in its entirety.

*Decision affirmed.*

Moyer, C.J., Sweeney, Douglas and H. Brown, JJ., concur.

Holmes and Wright, JJ., dissent.

Holmes, J., dissenting. I am fully cognizant of the statutory basis upon which the majority has arrived at its conclusion that the Rickenbacker Port Authority ("RPA") property is taxable. This conclusion is not unreasonable if the statutes authorizing the creation of port authorities and their available tax exemptions are narrowly construed. However, I believe that a broader interpretation of all pertinent sections of law pertaining to these governmental entities will more reasonably carry out the legislative intent, and bring one to the conclusion that the property under consideration here is exempt from real property taxation. Specifically, in this regard, R.C. 4582.59 states that: "Sections 4582.22 to 4582.99 of the Revised Code being necessary for the welfare of the state and its inhabitants shall be liberally construed to effect the purposes thereof."

It is clear from a reading of the sections of law dealing with port authorities that the legislature created such entities as corporate bodies politic to exercise governmental powers for the benefit of the people of the state. It is also clear that the exercise of such powers is for a public purpose. Accordingly, R.C. Chapter 4582 provides specifically that "[t]he exercise by such port authority of the powers conferred upon it shall be deemed to be essential governmental functions of this state * * *." R.C. 4582.22(A). Also, in R.C. 4582.46, the legislature specifically provided that the activities of port authori-

ties are for a public purpose and extended to them a special exemption from property taxes.

The port authorities' public purpose is reflected in the broad powers granted to them by the General Assembly pursuant to R.C. 4582.31. The various divisions of R.C. 4582.31 provide specific, broad powers to port authorities, including the following powers:

(1) To acquire property and to lease or rent from or operate port authority facilities (R.C. 4582.31[D]);

(2) To make available the use or services of the port authority facility to private individuals as well as government agencies (R.C. 4582.31[F]);

(3) To enjoy the same rights, privileges and powers granted municipal corporations (R.C. 4582.31[J]);

(4) To promote, advertise and publicize the port authority and its facilities to shippers and other commercial interests (R.C. 4582.31[M]);

(5) To acquire by gift or purchase, hold, lease and dispose of real and personal property and interests therein in the exercise of its powers (R.C. 4582.31[O]);

(6) To make and enter into all contracts and agreements and execute instruments necessary and incidental to the performance of its duties (R.C. 4582.31[Q]);

(7) To charge, alter and collect rents and other charges for the use or services of the port authority (R.C. 4582.31[V]); and

(8) To do all acts necessary or proper to carry out its powers expressly granted (R.C. 4582.31[X]).

The majority holds that the tax exemption for port authority property set forth in R.C. 4582.46 is the exclusive exemption for property owned by the port authorities, and may not be read *in pari materia* with other sections of law which exempt government property from taxation. However, the RPA argues here, and I agree, that the exemption provided by R.C. 4582.46 is not exclusive, but may reasonably be read *in pari materia* with R.C. 5709.08 and 5709.121, statutes which generally exempt government property from taxation. More specifically, R.C. 5709.08 exempts public property used exclusively for a public purpose. R.C. 5709.121(B) defines "exclusively" as " * * * made available under the direction or control of [the public] institution * * * for use in furtherance of or incidental to its * * * public purposes and not with the view to profit."

RPA argues that its exercise of its statutory powers is exclusively for public purposes and without a view to profit as to the undeveloped property, and consequently this property is exempt pursuant to R.C. 5709.08 and

5709.121. RPA further argues that in addition to the public purpose exemption, an extra "safe harbor" from property taxation is provided by R.C. 4582.46 for port authority property subject to leases of one year or less. Thus, argues RPA, R.C. 4582.46 is in addition to the exemption available in R.C. 5709.08 and expands the exemption to port authorities by allowing property involved in profit-making enterprises to remain exempt so long as there is no lease for more than one year. This is not an unreasonable analysis of these sections of law read *in pari materia.*

The facts of this case are that RPA was established to generate the commercial and/or industrial development of Rickenbacker property deeded by the federal government to RPA, and by so doing to enhance the economic growth of the total surrounding area which had experienced a significant financial loss due to the removal of an annual military and civilian payroll of some $48 million. RPA, in order to carry out its overall governmental plan, enlisted the assistance of a private developer, Diversified Turner ("D/T"). To formalize this planned development relationship, RPA and D/T entered into an agreement in the form of a lease. As argued by RPA, this contractual relationship may be divided into distinct stages with different tax consequences. Stage one is the pre-developmental stage, when RPA received a nominal rental of $1 per acre per year, an amount which is obviously far less than RPA's expenses related to the ownership of the property. During this period of time when commercial development and tenants are being sought by D/T, the developer, there is, within the meaning of R.C. 5709.121(B), no "view to profit"; at this stage, there is only the developer's and RPA's expectation of future profit.

Stage two of the contract of lease commences when commercial development is realized and tenants obtained. Once the property is commercially developed, RPA has the potential to receive additional revenue and a view to profit would exist. At the end of one year's operation for profit, pursuant to R.C. 4582.46, the developed property becomes subject to real property taxes.

To specifically exemplify how this phasing-in of developed property to the tax rolls should take place under RPA's lease agreement with D/T, the record here shows that the first commercial development at the airfield was an air cargo hub for Flying Tiger Line, Inc., which occupied approximately ninety-four of the 1,642 acres of RPA's property, and that parcel remains taxable.

In keeping with the stated legislative policy that the statutes relative to port authorities should be liberally construed in order to carry out the purposes for which these governmental entities were created, the tax consequences of their holdings must be reasonably construed. From its inception through December 31, 1986, over ninety percent of RPA's funding has been provided by

taxpayers. It is not a reasonable interpretation of these laws to further burden taxpayers with real estate taxes on unproductive property during the period of its promotion and development. It seems more rational to provide tax exemption for this land held for a public purpose until the tenants have been found, commercial activity begins, and resulting profits are forthcoming.

The overall purposes and objectives of the development of port authorities in Ohio should be considered by this court and, in construing the related laws in a liberal manner, the undeveloped property of RPA should be found to be exempt from taxation.

In that the majority here has not construed the pertinent sections of law liberally and has not construed R.C. 4582.46 *in pari materia* with R.C. 5709.08 and 5709.121, it is my hope that the General Assembly will revisit this chapter of the Revised Code and make the necessary amendments that would give relief to RPA and other port authorities who may find themselves in such a position.

WRIGHT, J., concurs in the foregoing dissenting opinion.