[Cite as *Columbus City School Dist. Bd. of Edn. v. Testa,* 130 Ohio St.3d 344, 2011-Ohio-5534.]

COLUMBUS CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT, *v.*

TESTA, TAX COMMR., ET AL., APPELLEES.

[Cite as *Columbus City School Dist. Bd. of Edn. v. Testa,*

130 Ohio St.3d 344, 2011-Ohio-5534.]

*Taxation—Tax on income from property used for the support of a state university—R.C. 3345.17—Income-producing property may not be exempted under the statute unless the activity conducted on the property bears an operational relationship to university activities—Decision reversed.*

(No. 2010-1754—Submitted October 18, 2011—Decided November 1, 2011.)

APPEAL from the Board of Tax Appeals, No. 2008-M-408.

————————————

**Per Curiam.**

**{¶ 1}** In this real property tax exemption case, the Columbus City School District Board of Education ("school board") appeals from the decision of the Board of Tax Appeals ("BTA"), which affirmed the tax commissioner's grant of tax-exempt status to certain property owned by the "State of Ohio for the use and benefit of the Ohio State University" ("OSU"). The dispute centers on the proper construction of R.C. 3345.17, which provides that state-university property is exempt from real property taxation if it is "used for the support of such university."

**{¶ 2}** Under this statute, the tax commissioner and the BTA granted exemption to a two-story building with basement that generates rental income from a first-floor commercial tenant and second-floor residential tenants. OSU received title to the building through a bequest intended to provide scholarships to veterinary-medicine students at OSU. Before this court, the tax commissioner

argues that income-producing property like the parcel at issue qualifies for exemption under R.C. 3345.17 to the extent that the income generated by the property is devoted to university purposes. The school board contends that income-producing property may not be exempted under the statute unless the activity conducted on the property bears an operational relationship to university activities. We agree with the school board, and we therefore reverse.

## I.  Factual Background

{¶ 3}  The two-story building at issue is located south of the Ohio State University campus in Columbus. It houses four residential rental units on the second floor and a commercial space on the first floor and in the basement that was occupied at the time of the application by a McDonald's, and later by a credit union.

{¶ 4}  OSU acquired title to the property in 1992 through the estate of Mabel Elizabeth White, who bequeathed it subject to the requirement that the "real estate, or the proceeds from any sale therefrom" be "used to further fund, or establish, the David Stuart White Fellowship Fund." The testator then specified that the fund should be "invested and the income therefrom used for providing graduate fellowships * * * in any branch of veterinary medicine." When OSU acquired title, the property was subject to a 99-year renewable lease held by Long's College Book Company. In 2000, Long's had transferred the leasehold interest to Campus Partners for Community Urban Redevelopment. In October 2002, Campus Partners assigned the leasehold interest to OSU in consideration of a payment of $500,000, which led to a merger of title and termination of the lease.

{¶ 5}  A memorandum of understanding ("MoU") was executed on March 26, 2004, to "document[ ] the agreement, responsibilities and commitments of various [OSU] offices regarding the assignment of the [property at issue] in exchange for payment for all costs incurred by [OSU]." The stated

"primary goal" of the MoU is to "fund the David Stuart White Fellowship Fund ('Fund') to the fullest extent allowable under University policy and the law."

{¶ 6} According to the MoU, income from the property at issue would be applied first to paying down OSU's acquisition expense, after which the property would be assigned to the veterinary college. Under the MoU, proceeds of a sale by OSU would be directed to the veterinary college, and that college also would enjoy an option to occupy the building if a tenant vacated.

{¶ 7} OSU hired a commercial property-management firm, Buckeye Realty, to collect rents and maintain the property. Buckeye Realty retained a portion of rent to pay its management-related fees and expenses. There was no evidence whether the residential tenants were OSU students.

{¶ 8} The McDonald's lease called for the tenant to pay to the landlord two-thirds of the real estate taxes plus 100 percent of any increased taxes attributable to improvements made by McDonalds. Under its 2006 lease, the credit union pays 100 percent of real estate taxes based on the square footage that it occupies. Under these circumstances, the benefit of a tax exemption inures in part to OSU's commercial tenants.

## II. Procedural History

{¶ 9} On May 18, 2004, OSU filed an application to exempt the property for 2004, predicating the exemption claim on R.C. 3345.17. The school board opposed the exemption on the grounds that the property "consists of residential apartment units and a retail establishment." On March 18, 2008, the commissioner issued his final determination, which granted the exemption based on his review of the facts in light of *State ex rel. Univ. of Cincinnati v. Limbach* (1990), 51 Ohio St.3d 6, 7, 553 N.E.2d 1056.

{¶ 10} The school board appealed the final determination to the BTA, which held a hearing on August 14, 2009. At that hearing, OSU presented four witnesses and several exhibits in support of the claim, and the school board's

counsel cross-examined the OSU witnesses.  On September 14, 2010, the BTA issued its decision upholding the commissioner's determination.  *Columbus City School Dist. Bd. of Edn. v. Levin* (Sept. 14, 2010), BTA No. 2008-M-408, 2010 WL 3614560, *6.  Reiterating the commissioner's reliance on *Univ. of Cincinnati* and citing *Ohio State Univ. Bd. of Trustees v. Kinney* (1983), 5 Ohio St.3d 173, 5 OBR 392, 449 N.E.2d 1282, the BTA rejected the school board's contention that the use of property under R.C. 3345.17 may not be predicated solely on the use of the proceeds derived from purely commercial, income-producing property.  *Columbus City School Dist.* at * 5.   According to the BTA, the distinction between "use of property" and "use of proceeds derived from property" pertains to the charitable-use exemption at R.C. 5709.12(B), but not to R.C. 3345.17.  Id.

{¶ 11}  The school board has appealed, and we now reverse.

### III.  Analysis

{¶ 12}  R.C. 5717.04 requires us to determine whether the BTA's decision was "reasonable" and "lawful."   Under this standard, we acknowledge that " '[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations,' " we will affirm them.  *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.  In the present case, however, we are not called upon to review factual determinations of the BTA, but rather the scope of exemption under R.C. 3345.17.  Because this analysis requires us to construe and apply the language of the statute, we confront a question of law, and our review is de novo.  *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10.

**A.  The language of R.C. 3345.17 ties the exemption to the use of the property, not to the use of the proceeds**

*1.  OSU had the burden to show clear entitlement to the exemption*

{¶ 13} R.C. 3345.17 provides a tax exemption for "[a]ll property * * * of the boards of trustees and of the housing commissions of the state universities, * * * and of the state held for the use and benefit of any such institution," if that property is "used for the support of such institution," and the exemption continues "so long as such property is used for the support of such university."  Uncontested is the ownership qualification:  the property at issue is owned by the state for the benefit of OSU.  The dispute in this case centers on whether using income derived from rent paid by commercial and residential tenants qualifies the property at issue as being "used for the support of such university" under R.C. 3345.17.

{¶ 14} In construing statutory language, we "must ascertain and give effect to the intent of the legislature," which we determine by " 'read[ing] words and phrases in context and constru[ing] them in accordance with rules of grammar and common usage.' "  *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, ¶ 15, quoting *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11.

{¶ 15} In *Univ. of Cincinnati*, 51 Ohio St.3d at 7, 553 N.E.2d 1056, fn. 1, we cited a dictionary definition of "support":  support means " 'actively promote the interest or cause of,' " " 'give assistance to,' " and " 'pay the costs of: maintain.' "  Id., quoting Webster's Third New International Dictionary (1986) 2297.  But while "support" unquestionably *could* encompass the use of proceeds to defray costs incurred by the university, the statute subordinates the concept of *support* to the concept of *use*:  to qualify for exemption, the *property* must be used for the support of the university.  The statute notably does not explicitly allow or tie the exemption to the use of *income* from the property, but rather to the use *of the property itself*.

{¶ 16} In light of the foregoing discussion, an expansive reading of the phrase would permit the use of income by itself to qualify the property for exemption. But reading R.C. 3345.17 expansively would contravene the usual manner of construing exemption statutes. As the proponent of a tax exemption, OSU had the burden to "show that the language of the statute 'clearly express[es] the exemption' in relation to the facts of the claim." *Anderson/Maltbie Partnership v. Levin*, 127 Ohio St.3d 178, 2010-Ohio-4904, 937 N.E.2d 547, ¶ 16, quoting *Ares, Inc. v. Limbach* (1990), 51 Ohio St.3d 102, 104, 554 N.E.2d 1310. Indeed, R.C. 3345.17 creates an "exclusion from taxation" that as such "must be construed *strictly against* the taxpayer." (Emphasis sic.) *H.R. Options, Inc. v. Wilkins*, 102 Ohio St.3d 1214, 2004-Ohio-2085, 807 N.E.2d 363, ¶ 2. We have enforced this principle to the point of declaring that " ' "[i]n all doubtful cases exemption is denied." ' " *Anderson/Maltbie Partnership*, ¶ 16, quoting *A. Schulman, Inc. v. Levin*, 116 Ohio St.3d 105, 2007-Ohio-5585, 876 N.E.2d 928, ¶ 7, quoting *Youngstown Metro. Hous. Auth. v. Evatt* (1944), 143 Ohio St. 268, 28 O.O. 163, 55 N.E.2d 122. Our review of the record in light of the language of R.C. 3345.17 and the case law leads us to conclude that OSU did not sustain its burden.

*2. The legislative process negates an intent to permit property to qualify for exemption based solely on the use of its income*

{¶ 17} The need to focus on the use of the property itself, as opposed to the use of the proceeds from the property, is underscored by the existence of a much older companion provision to R.C. 3345.17 that exempts property of *municipal* universities. R.C. 3349.17. That statute explicitly exempts "property * * * located within the county in which a university, college, or other educational institution of any municipal corporation is located" when the "rents, issues, profits, and income of [that property] are used exclusively for the use, endowment, or support of such institution." This provision on its face provides an

6

exemption primarily if not exclusively to income-producing property. By contrast, R.C. 3345.17 makes no mention of income-producing property—with the result that any extension of the exemption to such property requires an expansive reading of its language.

{¶ 18} The state-university provision in this case, R.C. 3345.17, was enacted by the 105th General Assembly in 1963. Am.S.B. No. 271, 130 Ohio Laws 783, 1515 ("S.B. 271"). By contrast, the municipal-university exemption was enacted by the 79th General Assembly in 1911 as G.C. 7915-1. H.B. No. 65, 102 Ohio Laws 32. Given that the provision at issue was enacted against the background of the earlier provision, the focus of R.C. 3345.17 on the use of the property rather than its proceeds is striking and significant.

{¶ 19} Any doubt that the legislature enacted R.C. 3345.17 in 1963 with R.C. 3349.17 in mind is eliminated by the background of the 1963 enactment. As originally introduced on March 25, 1963, S.B. 271 contained language exempting state-university property based on the use of "the rents, issues, profits, or income" derived from the property, just as R.C. 3349.17 exempts municipal-university property on that basis. But amendments deleted the reference to rents, issues, profits, or income from state-university property. Thus, the legislature appears to have specifically contemplated an exemption for income-producing property at the outset, only to change its mind during deliberations. The General Assembly ultimately opted for an exemption based on the use of the property, not on the use of its proceeds.

{¶ 20} The tax commissioner characterizes the language of R.C. 3349.17 as "restrictive" compared to R.C. 3345.17. R.C. 3345.17, he asserts, exempts property from taxation based on the use of its proceeds as well as the use of the property itself. But the suggestion that the process of legislative amendment *supports* applying R.C. 3345.17 in the present case is anomalous. As originally introduced, the statute would grant an exemption to income-producing property

by its plain terms, but the amendment process specifically removed all reference to income-producing property from the exempting language of the statute.

{¶ 21} We conclude that the amendment process militates against, not in favor of, granting the exemption in this case. While the position of the commissioner and OSU in this case would fit neatly under the originally proposed language, it requires an expansive reading of the language that was actually enacted. The legislative background suggests that such a reading is particularly inappropriate in this case.

**B. The case law does not establish the availability of exemption under R.C. 3345.17 based solely on the use of income**

{¶ 22} Central to the appellees' arguments is the contention that the case law has already furnished the expansive reading that is required to justify the grant of exemption in this case. This argument necessitates a close look at those cases.

{¶ 23} In *Kinney*, 5 Ohio St.3d 173, 5 OBR 392, 449 N.E.2d 1282, OSU had acquired a 1.993-acre parcel adjacent to its airport. The property was part of the airport's "control zone" and was also used as part of the agriculture college's program for crop production to support animals that were "part of the teaching and research mission in animal husbandry." Id. at 173-174. On a small portion of the parcel was a house that was subject to a residential lease, under the terms of which the university received rent. Id. at 173. The tax-equalization commissioner contended that the half acre with the rented house could not be exempted, but the BTA and the court disagreed. The court characterized the house rental as a "secondary use" and held that the primary use was "in support of the academic mission of the Department of Aviation and Aeronautical and Astronautical Engineering and the College of Agriculture." Id. at 174-175.

{¶ 24} In *Univ. of Cincinnati*, 51 Ohio St.3d 6, 7, 553 N.E.2d 1056, a 1.13-acre parcel improved with two buildings was donated to the university. One

of the buildings housed a Laundromat, and the other was occupied in part by a convenience store. Id. at 6-7. These two establishments occupied 12 percent of the property and paid rent that was directed into the university's general fund. But the other 88 percent of the property was occupied, in part, by the university's College of Design, Architecture, Art, and Planning, with the remainder being planned as either a maintenance garage for the main campus or as a residence facility for the medical center. Id. at 7. The court affirmed the BTA's grant of exemption based not only on the finding that the rent went into the university's general operating fund, but also on the finding that "there were plans to develop the property in a manner to serve the university's medical center or its main campus." Id.

{¶ 25} The tax commissioner (who in the earlier cases took a more restrictive approach to R.C. 3345.17) now champions the view that *Kinney* and *Univ. of Cincinnati* established that "the leased properties were 'used for the support of' the state universities because the rental income was deposited into the universities' general fund and used for daily operational expenses." OSU supports that position, while noting that the specific scholarship-fund purposes to which the income would be devoted (after the university's cost of purchasing the leasehold interest had been reimbursed) furnished additional grounds for exemption. Both appellees regard the earlier cases as controlling and argue that they require the grant of the exemption here.

{¶ 26} As the foregoing discussion of the cases reveals, however, *Kinney* and *Univ. of Cincinnati* do not stand for the proposition advanced by the appellees. To be sure, the use of rental income for the support of the university was an element in each of those cases, but in neither case did the court understand the university to be using the property *solely* for the production of income through rent paid by private parties—which is the situation that we confront in the present case. To the contrary, in *Kinney*, we specifically declared that the use of the

house and grounds as rental property was a *secondary* use, and in *Univ. of Cincinnati*, we emphasized that the commercial use encompassed only 12 percent of the property, which was also subject to both current and prospective uses that supported university activities apart from the generation of any income.

{¶ 27} Indeed, the principle to be derived from *Kinney* and *Univ. of Cincinnati* is that an ancillary use of property that generates income does not defeat exemption as long as the property is used, to some degree, either currently or prospectively, in a way that operationally relates to university activities. The use of the income to support university activities, whenever there is any such income, is probably a necessary condition for exemption. But that does not mean, as the appellees assert here, that the use of income, by itself, suffices to qualify the property for exemption. Indeed, allowing an exemption for property leased to a commercial tenant is particularly troubling, since it makes the tax exemption inure to the benefit of a commercial enterprise rather than the intended nonprofit beneficiary.

{¶ 28} The tax commissioner also contends that the narrower reading of R.C. 3345.17 advocated by the school board violates the precept that the court should construe statutes to give effect to all their language. See R.C. 1.47(B). In the commissioner's view, the narrower reading of R.C. 3345.17 makes it largely, if not completely, duplicative of other exemption statutes, especially the exemption for "public colleges and academies" at R.C. 5709.07(A)(4). But the fact that R.C. 3345.17 may substantially or completely overlap other exemptions does not furnish a reason to override a clearly intended legislative limitation—in this case, the limitation of R.C. 3345.17 to situations where property is used in ways that operationally support university activities. Tellingly, the commissioner does not cite authority for his view. Indeed, in the past, we have applied R.C. 1.47(B) not to expand the scope of real property tax exemptions but to enforce their limitations. See *Church of God in N. Ohio, Inc. v. Levin*, 124 Ohio St.3d 36,

2009-Ohio-5939, 918 N.E.2d 981, ¶ 30 ("a property owner may not evade the limitations imposed with respect to a specific tax exemption by claiming exemption under a broad reading of other exemption statutes"), citing *Rickenbacker Port Auth. v. Limbach* (1992), 64 Ohio St.3d 628, 631-632, 597 N.E.2d 494.

### C. Neither the location of the property nor its status as a bequest to provide scholarships establishes its entitlement to exemption

{¶ 29} Although endorsing the broad view of exemption under R.C. 3345.17, OSU also advances another argument as a fallback position. Namely, OSU suggests that an aggregation of circumstances specific to this case brings it within the holding of the earlier cases that allowed exemption.

{¶ 30} In particular, OSU points to (1) the location of the property on "one of the main arteries running through campus," Neil Avenue, as well as in the south campus Gateway area and (2) the property's status as a bequest intended to generate money for veterinary-medicine scholarships. While the properties at issue in both *Kinney* and *Univ. of Cincinnati* were near a university facility or campus, neither decision attached overriding significance to the bare fact of physical proximity.

{¶ 31} In *Kinney*, the residential parcel at issue was close to the university's airport, but the overriding factor was that the parcel "was a small part of a seventy-eight acre acquisition which was intended to and does further teaching and research in aviation and agriculture." 5 Ohio St.3d at 174, 5 OBR 392, 449 N.E.2d 1282. In *Univ. of Cincinnati*, the proximity to the nursing college and the university hospital was significant because of the "plans for development of the site as a maintenance service garage for the main campus or as a residence facility for the medical center." 51 Ohio St.3d at 7, 553 N.E.2d 1056.

**{¶ 32}** Moreover, the fact that the ultimate destination of the property's income was a scholarship fund does not change the analysis. Use of income from property can "support" the university whether the income is placed into general revenues or into an earmarked fund. But in neither instance does the statute permit the exemption based upon the use of income.

**{¶ 33}** Nor is it insignificant that the commercial tenant who pays the tax with respect to the square footage that it occupies receives the actual benefit of the exemption. To be sure, the tax commissioner argues that the existence of the tax exemption may permit OSU to extract a higher rent in future years to benefit the scholarship fund. But OSU would be able to do so only because the exemption allows it to enjoy a preferred tax status as a commercial landlord—a competitive advantage that the legislature does not appear to have intended.

**{¶ 34}** Because there is neither a current nor a prospective use of the property operationally related to university activities, OSU's exemption application should have been denied.[1]

### IV. Conclusion

**{¶ 35}** For all the foregoing reasons, the BTA acted unlawfully when it affirmed the tax commissioner's grant of exemption. We therefore reverse the decision of the BTA.

Decision reversed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Rich Gillis Law Group, L.L.C., Mark Gillis, and Kelley Gorrey, for appellant.

---

1. The school board also advances a constitutional argument, but our disposition of the case on statutory grounds makes that argument moot.

Michael DeWine, Attorney General, and Julie E. Brigner, Assistant Attorney General, for appellee tax commissioner.

Carlile, Patchen & Murphy, L.L.P., and Jackie Lynn Hager, for appellee state of Ohio for the use and benefit of Ohio State University.

_____