[Cite as *Morris v. Mottern*, 2015-Ohio-4523.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| DOUGLAS C. MORRIS | | C.A. No.     14CA0043-M |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| SHELBY L. MOTTERN | | |
| Appellant | | CASE No.     11 PA 0125 |

DECISION AND JOURNAL ENTRY

Dated: November 2, 2015

CARR, Judge.

{¶1} Appellant, Shelby Mottern, appeals from a judgment of the Medina County Court of Common Pleas, Domestic Relations Division, that established a parent-child relationship between her minor child and his alleged father, Douglas Morris, and allocated parental rights and responsibilities between Ms. Mottern and Mr. Morris. Because the Medina County court lacked statutory authority to exercise its jurisdiction in this case, this Court reverses and remands.

I.

{¶2} Ms. Mottern is the mother of B.M., born during September 2005, while Ms. Mottern was involved in a non-marital, romantic relationship with Mr. Morris. According to the allegations of Mr. Morris's complaint, he and Ms. Mottern resided together with B.M. in Pennsylvania and then Portage County, Ohio, for the first two and one-half years of the child's life before Mr. Morris relocated to Medina County and Ms. Mottern remained in Portage County. Notably, Mr. Morris and Ms. Mottern apparently never executed an acknowledgement that Mr.

Morris was the legal parent of B.M., nor did they otherwise obtain a legal determination that Mr. Morris was the father of B.M. Instead, they simply agreed that Mr. Morris was B.M.'s father and made informal arrangements about when each of them would spend time with B.M. and how they would otherwise meet his basic needs. By the summer of 2011, B.M. was spending most of his time in Medina County with daycare and preschool providers and at the home of Mr. Morris.

{¶3} On June 1, 2011, Mr. Morris filed a complaint in the Medina County Court of Common Pleas, Domestic Relations Division, explaining that he was concerned about registering B.M. for kindergarten. His complaint explicitly sought to legally establish his "paternity" of the child and to establish or modify "residential parent and legal custodian" and "parenting time, companionship or visitation." Mother was served with a copy of the complaint on June 23, 2011.

{¶4} On July 15, 2011, Mother moved to dismiss the complaint in this case because Mr. Morris had failed to comply with the statutory requirement that the matter be filed in the county where the child resides. *See* R.C. 3111.381; 3109.12. Because she was the unmarried mother of B.M. and there had been no order by "a court of competent jurisdiction * * * designating another person as the residential parent and legal custodian[,]" she argued that she was the child's sole residential parent. R.C. 3109.042. Consequently, she asserted that the child legally resided with her in Portage County and that only a Portage County administrative agency or court had statutory authority to establish a parent and child relationship between Mr. Morris and B.M. Shortly afterward, Ms. Mottern filed with the Portage County Child Support Enforcement Agency to establish a parent and child relationship between Mr. Morris and B.M. and to calculate child support.

{¶5} Mr. Morris opposed the motion to dismiss this action from the Medina County Domestic Relations Court, asserting that B.M. resided in Medina County and set forth facts about the child spending considerable time there attending daycare, preschool, and staying at his home. Following a hearing before a magistrate, the magistrate agreed that B.M. resided in Medina County because that is where he spent most of his time. Consequently, the magistrate concluded that this case could proceed in Medina County and denied Ms. Mottern's motion to dismiss. The trial court adopted the magistrate's decision the same day.

{¶6} Ms. Mottern filed timely objections to the magistrate's decision, reiterating her argument that, as a matter of law, B.M. legally resided with her in Portage County because she was his sole residential parent. She argued that the parties' agreement about paternity and that B.M. would spend time with Mr. Morris and attend preschool and daycare in Medina County did not legally establish B.M.'s residence in Medina County. She again emphasized that there had been no court order to supersede her legal status as the sole residential parent of B.M.

{¶7} The trial court overruled Mother's objections. Although Ms. Mottern attempted to appeal from that order, this Court dismissed *Morris v. Mottern*, 9th Dist. Medina No. 12CA0037-M, for lack of a final, appealable order.

{¶8} Following another hearing, the magistrate decided that Mr. Morris had a parent and child relationship with B.M. and that he should be designated the child's primary residential parent. The trial court adopted the magistrate's decision. Mother raised objections to the magistrate's decision on the merits and also renewed her argument that the Medina County Domestic Relations Court lacked statutory authority to exercise its jurisdiction over these proceedings and should have granted her motion to dismiss. The trial court overruled all of Mother's objections. Regarding the court's statutory authority to preside over this action, the

trial court agreed with the magistrate that the child's legal residence was in Medina County at the time Mr. Morris filed his complaint. Ms. Mottern appeals and raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY FAILING TO DISMISS [MR. MORRIS'S] MOTION FOR PATERNITY AND ALLOCATION OF HIS PARENTAL RIGHTS AND RESPONSIBILITIES FILED IN HIS COUNTY OF RESIDENCE, MEDINA COUNTY, OHIO, WHERE MOTHER IS THE SOLE RESIDENTIAL PARENT AND SOLE LEGAL CUSTODIAN OF THE MINOR CHILD UNDER R.C. [] 3109.042 AND SHE RESIDES IN PORTAGE COUNTY, OHIO[,] AND NO REQUEST FOR AN ADMINISTRATIVE DETERMINATION OF PATERNITY HAD BEEN MADE PRIOR TO FILING SAID ACTION.

{¶9} Ms. Mottern argues that the trial court lacked statutory authority to preside over this action because B.M. legally resided with her, as the child's sole residential parent, in Portage County. Ms. Mottern has correctly argued throughout these proceedings that, despite any informal agreement she had with Mr. Morris, the sole means for establishing a legal relationship between a parent and child in Ohio is set forth in R.C. Chapter 3111.

{¶10} The legal parent and child relationship between Ms. Mottern and B.M. was established by operation of law because she is his biological mother and gave birth to him. R.C. 3111.02(A). Because a man does not physically give birth to a child, establishing his legal status as the child's father is necessarily more complicated. Consequently, the Ohio General Assembly has set forth in R.C. Chapter 3111 the specific means by which a man will be legally recognized as the father of a child.

{¶11} Because Ms. Mottern and Mr. Morris were not married at or near the time of B.M.'s birth, nor had they unsuccessfully attempted to marry, no presumption about Mr. Morris's paternity arose under R.C. 3111.03(A)(1) or (2). Nevertheless, Mr. Morris and Ms.

Mottern had the opportunity to execute an acknowledgement of paternity at the time of B.M.'s birth in Pennsylvania or after the parties moved to Ohio, which would have been forwarded to the appropriate administrative agency in either state and, after a period of time, would have established a final administrative determination of Mr. Morris's parent and child relationship with B.M. *See, e.g.*, R.C. 3111.03(B); R.C. 3111.23; R.C. 3111.25; 23 Pa.Con.Stat.Ann. 5103. In Pennsylvania, as in Ohio, the hospital where B.M. was born had a statutory duty to discuss this administrative process for establishing paternity with both unmarried parents, if possible, and to facilitate the execution and administrative processing of that document. *See* 23 Pa.Con.Stat.Ann. 5103(c); R.C. 3727.17.

{¶12} For reasons not explained on the record, despite the relative ease with which the parties could have executed an acknowledgement of Mr. Morris's paternity of B.M. in Pennsylvania or Ohio, which would have led to a final administrative determination of his parent and child relationship with B.M., they did not do so. Instead, Mr. Morris attempted to bypass that administrative determination by proceeding directly to the trial court.

{¶13} Although he was authorized by R.C. 3111.04 to bring an court action to establish a parent and child relationship with B.M. because he was a man alleging himself to be the child's father, he was also required to comply with the requirements of R.C. 3111.381 because there had been no prior administrative determination that he was B.M.'s father. R.C. 3111.381(A) provides in relevant part:

> Except as provided in divisions (B), (C), (D), and (E) of this section, no person may bring an action under sections 3111.01 to 3111.18 of the Revised Code unless the person has requested an administrative determination under section 3111.38 of the Revised Code of the existence or nonexistence of a parent and child relationship.

{¶14} In other words, the R.C. Chapter 3111 requires that unmarried parents establish the father's parent and child relationship through an administrative determination "except as provided" in R.C. 3111.381(B),(C),(D), and (E). Those subsections set forth the sole means by which the mother or purported father may bypass an administrative determination and file a parentage action directly with the court (juvenile or domestic, depending on the county). *See* R.C. Chapter 3111; R.C. 2301.03.

{¶15} Consequently, the only procedural means through which Mr. Morris was authorized by statute to bypass an administrative determination and invoke a court's jurisdiction to determine that he had a parent and child relationship with B.M. was R.C. 3111.381(C), which provides:

> (C) An action to determine the existence or nonexistence of a parent and child relationship may be brought by the putative father * * * *in the county in which the child resides*, without requesting an administrative determination, if the putative father brings the action in order to request an order to determine the allocation of parental rights and responsibilities. * * * (Emphasis added.)

{¶16} The dispute under Ms. Mottern's first assignment of error is where B.M. resided, for purposes of R.C. 3111.381(C), at the time Mr. Morris filed this action. When interpreting the meaning of "the county in which the child resides," as that phrase is used in R.C. 3111.381, our review is de novo because we interpret statutory language as a matter of law. *Columbus City School Dist. Bd. of Edn. v. Testa*, 130 Ohio St.3d 344, 2011-Ohio-5534, ¶ 12.

{¶17} Throughout the trial court proceedings, Ms. Mottern argued that, by operation of law, B.M. resided with her in Portage County. Mr. Morris responded that the evidence would prove that B.M. had been residing with him in Medina County. After rejecting Ms. Mottern's argument that B.M.'s residence was determined as a matter of law, the magistrate, and later the trial judge, considered evidence about where B.M. attended preschool and daycare and

physically spent most of his time and ultimately found that "the county in which the child reside[d]" was Medina County. Consequently, the trial court concluded that this action was properly filed in Medina County.

{¶18} We cannot agree with Mr. Morris that B.M.'s legal residence was established by the mere fact that he spent a lot of time with him or others in Medina County because Mr. Morris had not been legally recognized as B.M.'s father, nor did he have any legal parental rights or responsibilities. On the other hand, Ms. Mottern's legal rights and responsibilities as B.M.'s mother were established by operation of law when she gave birth to him. R.C. 3109.042 then provided that "[a]n unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian."[1] It is undisputed that, at the time Mr. Morris filed this action, no court had ever designated anyone as B.M.'s residential parent.

{¶19} Although the term "residential parent" is not defined in R.C. Chapter 3109 or 3111, the residential parent is the parent who "is allocated the primary parental rights and responsibilities for the care of a child[.]" *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 23, citing R.C. 3109(A)(1). Based on the plain meaning of "residential," the legal designation of Ms. Mottern as "sole residential parent" means that she was the parent with whom B.M. legally resided.

{¶20} Moreover, although a minor child's legal "residence" is not defined in R.C. Chapter 3111 or 3109, it is defined within other contexts of the Ohio Revised Code to be the home of the parent(s) or other custodian or guardian with whom the child legally resides, as

---

[1] This same language is now embodied in subsection (A) of the current version of R.C. 3109.042.

determined by court order or by operation of law. *See, e.g.*, R.C. 2151.06 and R.C. 2151.362 (for purposes of R.C. Chapter 2151); R.C. 3313.64 (child's residence for educational purposes is the home of his residential parent(s) or legal custodian). It is only reasonable to conclude that R.C. 3111.381 requires that the action be filed in the county where the child legally resides, not another county where he might be located pursuant to an informal arrangement.

{¶21} Evidence that B.M. spent much of his time in Medina County should not have been considered to determine where he resided for purposes of R.C. Chapter 3111. Ohio law does not support the trial court's conclusion that Mr. Morris, who had not yet acquired any legal status as the father of B.M., had somehow become the child's residential parent through the parties' informal arrangements, as those arrangements were not legally binding. The trial court not only undermined Ms. Mottern's legally-established rights and responsibilities as B.M.'s sole residential parent, but also allowed Mr. Morris to circumvent the statutory procedure for establishing a parent and child relationship and allocating parental rights and responsibilities. *See Myers v. Mantia*, 2d Dist. Miami No. 93-CA-44, 1994 WL 277859, *3, fn.1 (June 22, 1994); *In re L.M.*, 2d Dist. Greene No. 2010-CA-76, 2011-Ohio-3285, ¶ 41.

{¶22} Although this case fell within the trial court's subject-matter jurisdiction under R.C. 2301.03(U), it did not fall within its authority to preside over this case under the explicit requirement of R.C. 3111.381 that the action be filed in the child's county of residence. The term "jurisdiction" is "'a word of many, too many, meanings.'" *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004–Ohio–1980, ¶ 33, quoting *United States v. Vanness*, 85 F.3d 661, 663, fn. 2 (D.C.Cir.1996). In addition to subject-matter jurisdiction and personal jurisdiction, the Ohio Supreme Court has also recognized what it characterized as a "third category of jurisdiction":

> The term 'jurisdiction' is also used when referring to a court's exercise of its jurisdiction over a particular case. *See State v. Parker*, 95 Ohio St.3d 524, 2002-

Ohio-2833, ¶ 20 (Cook, J., dissenting); *State v. Swiger*, 125 Ohio App.3d 456, 462 (9th Dist.1998). 'The third category of jurisdiction [i.e., jurisdiction over the particular case] encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction.'

*Pratts* at ¶ 12.

{¶23} Examples of the third category of jurisdiction have included requirements of statutes or rules that impose constraints on the trial court's authority to exercise its jurisdiction over a specific case. *Pratts* and *Swiger* involved restrictions on the "jurisdiction" of a single trial judge to determine guilt or impose sentence on a capital murder defendant under R.C. 2945.06 and R.C. 2931.03. Other cases in which courts have recognized this type of jurisdiction have likewise involved constraints on the trial court's authority imposed by specific statutes or rules. *See, e.g., In re L.S.*, 9th Dist. Summit No. 23523, 2007-Ohio-1583; *State v. Franklin*, 8th Dist. Cuyahoga No. 81426, 2003-Ohio-2649; and *GMAC, LLC. v. Greene*, 10th Dist. Franklin No. 08AP-295, 2008-Ohio-4461. The requirement of R.C. 3111.381 that the action be filed in the county of the child's residence is another example of a statutory constraint on the court's authority to exercise its subject-matter jurisdiction.

{¶24} Although alleged errors in the trial court's exercise of its jurisdiction may be forfeited if not timely raised, Ms. Mottern preserved this error for appellate review. Through her motion to dismiss, she argued that Mr. Morris filed this action in the wrong county. She also raised this issue through her timely objections to the magistrate's March and August 2012 decisions.

{¶25} Although the dissent relies on the Ohio Supreme Court's recent decision in *In re Z.R.*, ___ Ohio St.3d ___, 2015-Ohio-3306, we do not agree that its interpretation of R.C. 2151.27(A)(1) applies to R.C. 3111.381. Other than each statute referring to the county (or counties) in which a statutory action "may" be filed, there is no similarity between them.

Specifically, the Supreme Court's reasoning in *Z.R.* hinged in part on the broad statutory authority of juvenile courts to protect the best interests of children who have been alleged to be abused, neglected, or dependent, as the State assumes the role of parens patrie in those cases. *In re Z.R.* at ¶ 20-21.

{¶26} Moreover, the Court construed R.C. 2151.27 as a discretionary venue statute because it provided that the complaint "may" be filed in the county where the child resided "or" where the alleged dependency occurred, and, although subsection (F) authorized dismissal of the complaint where an alleged unruly child completed a court diversion program, no other subsection of R.C. 2151.27 mentioned dismissal. *Id.* at ¶ 22-23. The Court also focused on Juv.R. 11(A), which explicitly grants the juvenile court discretion to determine whether to transfer a case to the county of the child's residence, but does not refer to dismissing the complaint.[2]

{¶27} In sharp contrast to *Z.R.*, this was not a case in which the state sought to invoke the broad jurisdiction of the juvenile court to protect the welfare of an allegedly dependent child.[3] Instead, this was a parentage dispute between two private parties. Moreover, the statutory law in both Ohio and Pennsylvania expresses an obvious intent that unmarried parents promptly execute an acknowledgement of paternity, which must be facilitated by hospital personnel at the time of the child's birth, and will lead to a prompt and final administrative determination of the child's paternity. Because the parties were apparently living together at the time of the child's birth, it is unknown why they did not execute such an acknowledgement,

---

[2] Similar provisions are set forth in R.C. 2151.271.

[3] Although this case was filed in domestic relations court, in Medina County, as the dissent correctly notes, the juvenile court would have also had subject-matter jurisdiction.

which would have administratively established Mr. Morris's paternity and allowed him to file this action in Medina County. Instead, Mr. Morris chose not to use that procedure.

{¶28} Although the dissent asserts that this case is governed by the broad language of R.C. 3111.06(A), R.C. 3111.381(A) supersedes that language, for it provides that:

> Except as provided in divisions (B), (C), (D), and (E) of this section, no person may bring an action under sections 3111.01 to 3111.18 of the Revised Code unless the person has requested an administrative determination under section 3111.38 of the Revised Code of the existence or nonexistence of a parent and child relationship.

R.C. 3111.381 explicitly includes an action brought under R.C. 3111.06 and provides that "no person may" bring that action unless the person has first sought an administrative determination under R.C. 3111.38 "except as provided" under R.C. 3111.381(B),(C),(D), and (E).

{¶29} The language "no person may" has always been understood to mean that the action is prohibited unless the stated terms are satisfied. *See State v. Wellman*, 37 Ohio St.2d 162 (1974), paragraph one of the syllabus; *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, ¶ 30 (construing the "no person may" language as mandatory). Aside from paternity determinations that might arise during a divorce or the probate of an alleged father's estate (subsections (D) and (E)), R.C. 3111.381(B) and (C) set forth the sole means by which a mother or a purported father are authorized to bypass an administrative determination and proceed directly to a court to establish a parent and child relationship. R.C. 3111.381(B) and (C) specify that those actions are to be filed in the county of the child's residence.

{¶30} Although subsections (B) and (C) provide that the mother or purported father "may" file the actions in the county of the child's residence, that is because they are authorized but are not required to file a court action. Unlike the statute construed by the Supreme Court in *Z.R.*, R.C. 3111.381(B) and (C) do not connect the term "may" with the word "or" followed by

an alternate choice of county. *See Z.R.* at ¶ 22 (emphasizing the use of each term in quoting of the provision). Under R.C. 3111.381(B) and (C), the authority to bypass an administrate determination of paternity is confined to filing in the county where the child resides. We do not agree with the dissent that this requirement is akin to an exhaustion of administrative remedies.

{¶31} Moreover, even if we could agree with the dissent that R.C. 3111.381 pertains to a defense other than an exercise of jurisdiction, Ms. Mottern timely raised this defense in the trial court. If dismissal was not warranted, the trial court should have transferred the case to Portage County. Instead, the trial court concluded that Mr. Morris had filed in the correct county because it incorrectly found that B.M. legally resided with him. The trial court's justification for keeping this case and deciding it on its merits was based on circular reasoning, for Mr. Morris had no legal rights as B.M.'s father until the trial court later held that he did.

{¶32} We agree with the dissent that problems and inconvenience may arise under numerous scenarios when unmarried parents wait months or years to establish a legal relationship between the father and the child. It is also our concern for future cases that drives the majority decision. If this Court were to authorize unmarried parents to bypass the specific requirements of R.C. Chapter 3111, we would not only undermine the role of the legislature, but might also encourage further disputes between the parties to custody litigation that already has the potential to become contentious.

{¶33} This Court is obligated to rule on the merits of issues properly raised on appeal and cannot ignore that the trial court committed reversible error by exercising its jurisdiction over this case. The statutorily-mandated procedures of R.C. Chapter 3111 set forth the exclusive means by which a father and child relationship can be established and reflect policy considerations that balance the interests of both parents as well as the best interest of the child.

Although we are reluctant to upset an established custodial arrangement, this Court must interpret the statutory language as a matter of law, not based on the unique facts of this case. Mother's first assignment of error is sustained.

## REMAINING ASSIGNMENTS OF ERROR

{¶34} Ms. Mottern raises two additional assignments of error that pertain to the merits of the trial court's decisions. Because this Court has determined that the trial court had no statutory authority to rule on the merits of Mr. Morris's complaint, Ms. Mottern's remaining assignments of error have been rendered moot and will not be addressed. *See* App.R. 12(A)(1)(c).

### III.

{¶35} Ms. Mottern's first assignment of error is sustained and her remaining assignments of error were not addressed because they have been rendered moot. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CONCURS.

SCHAFER, J.
DISSENTING.

{¶36} Since I would overrule the first assignment of error and proceed to address the remaining assignments, I must respectfully dissent. I disagree with the majority's analysis for three reasons. First, I would conclude that R.C. 2301.03(U) and 3111.06(A) vested the trial court with jurisdiction to consider this matter. Second, unlike the majority, I do not believe that R.C. 3111.381, when read in conjunction with several other statutory provisions, creates a jurisdictional barrier. And, third, I am unable to agree with the majority's approach in this matter since I believe that it fails to account for the language of R.C. 3111.06(A) and R.C. 3111.381 and it produces absurd consequences that were unintended by the General Assembly.

**A. The Trial Court Had Jurisdiction**

{¶37} R.C. 2301.03(U) and 3111.06(A) are the relevant provisions that we must consider when deciding whether the trial court had jurisdiction in this matter. R.C. 3111.06(A) states that a paternity action "may be brought in the * * * other court with jurisdiction under

section 2101.022 or 2301.03 of the Revised Code of the county in which the child, the child's mother, *or the alleged father resides*[.]"   (Emphasis added.)  Relatedly, R.C. 2301.03(U) explicitly gives the Medina County Court of Common Pleas, Domestic Relations Division, jurisdiction over paternity and legal custody cases.  Based on these provisions, the trial court plainly had jurisdiction over this matter.

### B.  R.C. 3111.381 Does Not Implicate Jurisdiction

{¶38}  I disagree with the majority looking past these provisions and relying on R.C. 3111.381 to determine that the trial court lacked jurisdiction over this particular case.  In my view, R.C. 3111.381 merely creates an exhaustion of administrative remedies requirement that does not affect the trial court's jurisdiction.  I also believe that R.C. 3111.381's only import regarding judicial paternity actions is that it relates to venue, not jurisdiction.

### 1.  R.C. 3111.381 Relates to an Administrative Exhaustion Requirement

{¶39}  The proper way to view R.C. 3111.381 is that it creates an administrative exhaustion requirement before bringing a judicial paternity action.  R.C. 3111.381(A) defines the general exhaustion requirement while subsections (B), (C), and (E) codify certain exceptions to the exhaustion requirement.  Since the statute only relates to the exhaustion of administrative remedies before bringing a judicial action, it creates an affirmative defense and a party wishing to assert it must specifically plead it.  And, most critically, the failure of a party to comply with the exhaustion requirement does not provide any hint of jurisdictional infirmity.  *E.g. Driscoll v. Austintown Assocs.*, 42 Ohio St.2d 263, 276 (1975); *see also E.P.A. v. EME Homer City Generation, L.P.*, __ U.S. __, 134 S.Ct. 1584, 1602 (2014) (explaining that while an administrative exhaustion requirement is mandatory, "[a] rule may be mandatory, yet not jurisdictional" since "[i]t does not speak to a court's authority, but only to a party's procedural

obligations"). This recognition of the administrative exhaustion affirmative defense effectuates R.C. Chapter 3111.'s preference for administrative paternity determinations and it does not undermine the role of the General Assembly.

{¶40} I disagree with the majority's statement that this defense was timely raised in the trial court. Ms. Mottern's filings in the trial court requested the *dismissal* of this action for lack of jurisdiction and they never asserted an affirmative defense of failure to exhaust administrative remedies. Additionally, Ms. Mottern did not file a motion relating to improper venue that requested the transfer of her case to Portage County. Absent a proper motion, I do not see why the trial court should have sua sponte transferred the case to Portage County, as suggested by the majority.

### 2. R.C. 3111.381 Implicates Venue

{¶41} Moreover, R.C. 3111.381 implicates the issue of venue, not the jurisdiction of trial courts. *See Renacci v. Evans*, 9th Dist. Medina No. 09CA0004-M, 2009-Ohio-5154, ¶ 6 ("[V]enue is defined as a particular locality where a suit should be heard, after jurisdiction is established."). The Supreme Court of Ohio recently addressed the interplay between venue and jurisdiction, stating that it is "possible for the General Assembly to restrict any court's jurisdiction over a particular case based on a procedural requirement such as venue." *In re Z.R.*, __ Ohio St.3d __, 2015-Ohio-3306, ¶ 17. Nevertheless, the Court also recognized that it "is not wont to construe procedural provisions as jurisdictional barriers unless they are 'clearly statutorily or constitutionally mandated.'" *Id.*, quoting *Nucorp, Inc. v. Montgomery Cty. Bd. of Revision*, 64 Ohio St.2d 20, 22 (1980).

{¶42} Due to the similarities between R.C. 2151.27(A)(1), the subject statute in *Z.R.*, and R.C. 3111.381, I believe that the Court's guidance from *Z.R.* is applicable here and insightful

to the issues presented. The crux of Ms. Mottern's argument is that R.C. 3111.381(C) requires this paternity action to be litigated in Portage County, where she resides. But, like R.C. 2151.27(A)(1), R.C. 3111.381(C) states that "[a]n action to determine the existence or nonexistence of a parent and child relationship *may* be brought by the putative father of the child in the appropriate division of the court of common pleas in the county in which the child resides[.]" (Emphasis added.) Additionally, like the provisions of R.C. 2151.27, the provisions of R.C. 3111.381 do not include any reference to trial courts dismissing paternity actions that are not properly venued. In sum, drawing from *Z.R.*, I believe that "the failure to couch the venue provisions of [R.C. 3111.381(C)] in mandatory terms or to mention dismissal in that subsection strongly indicates that venue is not a jurisdictional requirement in the context of a [judicial paternity action]." *Id*. at ¶ 23.

{¶43} This conclusion is further bolstered when one considers the complexity of Ms. Mottern's reasoning for the purported lack of jurisdiction here. In order to reach her conclusion, she first points to R.C. 3111.06, which authorizes judicial paternity actions. According to her, though, that statute does not provide the full answer, so she then goes to R.C. 3111.381(A). Since R.C. 3111.381(A) does not even refer to a court, Ms. Mottern points to subsection (C), but this statute is not fully determinative of the issue, either. As a result, Ms. Mottern subsequently points to R.C. 3109.042, which relates to the default rule for custody of children of unmarried parents. And, when reading all four of these provisions from separate chapters of the Revised Code together, Ms. Mottern finally concludes that jurisdiction in this matter is only proper in Portage County. Such a logical maze is far from "clearly statutorily or constitutionally mandated" and I do not believe that linking these provisions together creates a mandatory jurisdictional barrier.

## C. The Majority's Approach Is Problematic

{¶44} I finally note that the majority's approach in this matter fails to account for the language of R.C. 3111.06(A) and R.C. 3111.381 and portends negative consequences for future litigants. In particular, I would like to highlight two problems that arise from the majority's approach.

{¶45} The first problem is that the majority's approach renders R.C. 3111.06(A)'s authorization of a judicial paternity in the county where *the alleged father resides* meaningless, which is a result surely not intended by the General Assembly. The majority opinion establishes that for any court in Ohio to have proper jurisdiction over a judicial paternity action, an alleged father must first go through the administrative paternity process or file a judicial action in the county where the child's unmarried mother resides. Pursuant to R.C. 3111.38, the alleged father has to file an administrative request in the county where the child or child's legal custodian resides. The administrative paternity process will result in one of three possible orders: (1) a finding of paternity; (2) a finding of non-paternity; or (3) an inconclusive finding. R.C. 3111.46, 3111.47. If the child support enforcement agency ("CSEA") issues either of the first two orders and the alleged father wants to object to it via a judicial action, R.C. 3111.49 requires him to file the action "in the county in which the [CSEA] that employs the administrative officer who issued the order is located." Similarly, if the CSEA issues an inconclusive order, the Administrative Code requires CSEA to file a judicial action in the county where it is located. *See* Ohio Adm.Code 5101:12-40-17(C)(3).

{¶46} Thus, under the majority's approach, an alleged father is left with no real choice. If he decides to go through the administrative process, the end result will be that he must litigate his judicial paternity action in the county where the child or the child's legal custodian resides.

Meanwhile, if he bypasses the administrative process, the alleged father must file his judicial action in the county where the child resides. I cannot agree with such an approach since it fails to give effect to R.C. 3111.06(A)'s authorization of judicial paternity actions in the county where the child, the child's mother, *or the alleged father* resides.

{¶47} The second problem is that the majority's approach fails to apply the long-standing maxim that "words in a statute should be construed in their ordinary and natural meaning * * * unless a different intention appears in the statute." *State ex rel. Gareau v. Stillman*, 18 Ohio St.2d 63, 64 (1969). The provisions of R.C. Chapter 3111. do not suggest that the General Assembly intended to have R.C. 3109.042's default custody rule apply to R.C. 3111.381(C), which provides the alleged father may file his action in the county where "the *child* resides." (Emphasis added.) It seems to me that had the General Assembly intended for R.C. 3109.042's rule to apply in R.C. 3111.381(C), it would have stated that the putative father may file his action in the county where "the *legal custodian of the child* resides." This becomes particularly clear when one considers the consequences that could flow from the majority's approach. For instance, say that alleged father lives in Medina County and mother lives in Portage County. After giving birth, mother moves to Lucas County and is completely absent from the child's life while child resides with his maternal grandmother in Portage County without a court order. Where is alleged father supposed to file his paternity action? Under the majority's view, the only county with proper jurisdiction is Lucas County, where the child has never lived, since that is where the child's legal custodian under R.C. 3109.042 lives. I cannot go along with such an interpretation of R.C. 3111.381(C).

**{¶48}** In sum, I believe that the trial court had jurisdiction in this matter and that we should overrule Ms. Mottern's first assignment of error. Therefore, I respectfully dissent from the majority's conclusion to the contrary.

APPEARANCES:

PATRICIA F. LOWERY, Attorney at Law, for Appellant.

MORA LOWRY, Attorney at Law, for Appellee.