[Cite as *In re L.M.*, 2011-Ohio-3285.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

IN THE MATTER OF:            :

                      :       Appellate Case No. 2010-CA-76

  L.M., A.J. and J.J.       :

                      :       Trial Court Case Nos. B37789
                      :                          B37796
                      :                          S38836

                      :

                      :       (Civil Appeal from Common Pleas
                      :        Court, Juvenile Division)

                      :

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of June, 2011.

. . . . . . . . . . .

CYNTHIA A. LENNON, Atty. Reg. #0019458, Post Office Box 68, Xenia, Ohio 45385
       Attorney for Appellant, D.J.

DAVID M. McNAMEE, Atty. Reg. #0068582, 42 Woodcroft Trail, Suite D, Beavercreek,
Ohio 45430
       Attorney for Appellees, M.M. and M.M.

DAVID R. MILES, Atty. Reg. #0013841, 125 West Main Street, Fairborn, Ohio 45324
       Attorney for Appellees, P.C. and D.C.

. . . . . . . . . . . .

HALL, J.

{¶ 1} D.J. appeals from the trial court's decision and entry modifying a prior custody

award and granting legal custody of her children to appellees P.C. and D.C. and to appellees

M.M. and M.M.

**{¶ 2}** The record reflects that there are three children at issue in this case: A.J. (born 9-27-98), L.M. (born 9-14-05), and J.J. (born 11-21-06). Following a complaint filed by Greene County Children Services, the trial court adjudicated the children abused and/or dependent based largely on D.J.'s drug addiction. By March 2007, the trial court had awarded legal custody of all three children to P.C. and D.C., who are the paternal grandparents of L.M. and J.J. Although P.C. and D.C. are not biologically related to A.J., he considers them his grandparents.

**{¶ 3}** In October 2007, L.M. and J.J. began staying with M.M. and M.M., who are their paternal uncle and aunt, for periods of time. By March 2008, the two children were residing full time with M.M. and M.M. near Cleveland, Ohio. A.J. continued to reside with P.C. and D.C. in Greene County. This arrangement was made without D.J.'s consent. In February 2009, D.J. filed complaints seeking to regain custody of A.J., L.M., and J.J. In March 2009, M.M. and M.M. filed their own complaint seeking legal custody of L.M. and J.J.

**{¶ 4}** The matter proceeded to an evidentiary hearing before a magistrate. In November 2009, the magistrate issued a decision transferring legal custody of L.M. and J.J. from P.C. and D.C. to M.M. and M.M. With regard to A.J., the magistrate allowed P.C. and D.C. to retain legal custody. D.J. objected to the magistrate's decision on several grounds. On September 8, 2010, the trial court heard oral argument on the objections. Thereafter, on October 15, 2010, the trial court overruled the objections. In its own findings of fact and conclusions of law, the trial court agreed with the magistrate's legal custody determinations.

**{¶ 5}** The trial court's factual findings include the following:

**{¶ 6}** "3. While [D.J.] developed a relationship and bond with [A.J.] before CSB

became involved, the same cannot be said regarding the younger two children, who both tested positive for drugs at birth. [L.M.], who was born at home, tested positive for cocaine when she was brought to the hospital. The child had to remain in the hospital for several days, and the agency obtained emergency custody on September 15, 2005. CSB placed [L.M.] with an aunt, where the child lived for nine months before being placed with [P.C. and D.C.]. While living with the aunt, [D.J.] saw [L.M.] about twice per month. While [L.M.] was living with [P.C. and D.C.], [D.J.] was to exercise visitation at the Greene County Family Visitation Center. She exercised visits sporadically and, due to numerous no-shows, her visits were terminated. [J.J.] was born premature and tested positive for cocaine, cannabis and amphetamines. He had to be kept at the Dayton Children's Medical Center for several weeks. The agency was awarded emergency custody on December 6, 2006, and the child was placed in foster care until January, 2007, when he began living with [P.C. and D.C.]. [D.J.] was not visiting with [J.J.] because she was in jail. The Court advised [D.J.] that she could petition for visitation after her release from incarceration.

{¶ 7} "4. When [A.J.] was first placed with [P.C. and D.C.], he was exhibiting a significant amount of anger and anxiety. They got him involved with Clark County's Mental Health Services Agency, beginning in 2007. The agency provided [A.J.] counseling (5/21/07 to 3/12/08, and 6/09 to the present), a partial hospitalization program for four months, and medication. His diagnoses include Anxiety Disorder, ADHD, and Oppositional Defiant Disorder. [A.J.]'s behavioral issues presented a significant challenge to [P.C. and D.C.], and required a lot of their attention.

{¶ 8} "5. [P.C. and D.C.] approached [M.M. and M.M.] about assisting with the care

of the younger two children, in part because the stress [P.C.] was feeling from the loss of her son ([L.M.] and [J.J.]'s father) was adding to the burden of raising three children, and in part because [P.C. and D.C.] felt that this sharing of caretaking would enable them to concentrate on [A.J.]'s needs. In October, 2007, [L.M.] and [J.J.] began staying with [M.M. and M.M.] for days or weeks at a time. In March, 2008, the children remained under the care of [M.M. and M.M.]. This placement by [P.C. and D.C.] was done without [D.J.]'s knowledge or consent. Arrangements were made between [P.C., D.C., M.M., and M.M.] to have the three children spend time together on weekends and holidays.

{¶ 9}  "6. [P.C. and D.C.] have been good caretakers for [A.J.]. The child's behavior problems have dissipated while living in their household. The bond and attachment he has developed with [P.C. and D.C.] is nearly equal to the bond and attachment he has with [D.J.]. During [A.J.]'s interview with the Magistrate regarding his wishes, the child expressed no preference as to which of the litigants should be his custodian; he only wishes that he continues to have regular contact with [P.C., D.C., and D.J.].

{¶ 10} "7. During the period of time of which [L.M.] and [J.J.] have been living with [M.M. and M.M.], the children have become fully integrated into [their] family, which includes M.M.'s daughter, S., age 13, and [M.M. and M.M.]'s son, J., age 11. The four children have a loving relationship with each other. [L.M.] and [J.J.] address [M.M.] as 'Mom.' Because of the circumstances surrounding their birth, these two children have special needs which have been met by [M.M. and M.M.]. These caretakers have built a college fund for the children. The death of their father made the children eligible for social security benefits of $824.00 per month per child, which money [P.C. and D.C.] forward to [M.M. and M.M.] to

cover the cost of their care. [M.M.] would have health insurance coverage for the children through his employment.

{¶ 11} "8. When [D.J.] was released from incarceration in February, 2008, her focus was on re-establishing contact with [A.J.], and [D.J.] has been having regular visits with him. She did ask [P.C.] about the welfare of the younger two children, but did not explore re-connecting with them. It was not until [D.J.] initiated her custody action in February, 2009, that she attempted to establish contact with [L.M.] and [J.J.]. During the pendency of her complaint, she has had visits with them; she refers to herself as [D.] while interacting with them. Because [D.J.] often brings toys for the children at these visits, [L.M.] and [J.J.] sometimes refer to her as 'the toy lady.' Prior to the initiation of these visits, [D.J.] was a total stranger to them.

{¶ 12} "9. [D.J.] has made significant strides in addressing her drug problem, positioning herself to being gainfully employed, and re-focusing on the responsibilities of being a parent. Her drug problem led her to criminal conduct and she was convicted of two counts of Grand Theft (F5). She spent time in the county jail, including the substance abuse treatment program called Greene Leaf, which she successfully completed. [D.J.] successfully completed community control, obtained a G.E.D. and commenced an Associates Degree Program to become a chemical dependency counselor. When [D.J.] was jailed on her criminal charges, she was pregnant. She gave birth to this child, [J.], who is in her care. [D.J.] referred herself to the county's Help Me Grow Program to become better able to meet [J.]'s needs. She successfully completed that program. She has adequate housing in a residence where her mother and handicapped sister also live. [D.J.] has not had employment since 2002 but is

looking for a job."

{¶ 13} After making the foregoing findings, the trial court looked to R.C. 2151.353(E)(2) and R.C. 2151.42(A) and (B), which govern the modification or termination of dispositional orders involving abused, neglected, or dependent children. The trial court determined that modification or termination of its existing legal custody orders was impermissible absent a change of circumstances of the children or the legal custodian and a finding that modification or termination was necessary to serve the children's best interest. The trial court then found that L.M. and J.J. had experienced a change of circumstances when they began residing with M.M. and M.M. The trial court also concluded that granting M.M. and M.M. legal custody of L.M. and J.J. was necessary to serve the children's best interest. In reaching this conclusion, the trial court rejected D.J.'s arguments that M.M. and M.M.'s request for legal custody was untimely and that it was required to find D.J. "unsuitable" before awarding legal custody to M.M. and M.M. Finally, with regard to A.J., the trial court found no change of circumstances because he continued to reside with P.C. and D.C. and maintained regular contact with his siblings. Accordingly, the trial court ordered legal custody of A.J. to remain with P.C. and D.C. while transferring legal custody of L.M. and J.J. to M.M. and M.M. This appeal followed.[1]

{¶ 14} In her first assignment of error, D.J. contends the trial court erred in finding no change of circumstances for A.J. even though his two siblings had left P.C. and D.C.'s home

---

[1] On March 31, 2011, D.J. moved to dismiss a "response brief" filed by M.M. and M.M. on March 28, 2011. Upon review, we note that the response brief actually is a surreply to D.J.'s March 17, 2011 reply brief. Under App.R. 16(C), no further briefs may be filed after the appellant's reply brief, except with leave of court. Because M.M. and M.M. did not obtain leave to file their surreply, D.J.'s motion will be sustained. For purposes of our analysis herein, we will not consider the brief filed by M.M. and M.M. on March 28, 2011.

to reside near Cleveland with M.M. and M.M. D.J. also claims the trial court erred in finding that granting her legal custody would not be in A.J.'s best interest.

{¶ 15} We find the foregoing arguments to be unpersuasive. We review the trial court's determination regarding a change of circumstances for an abuse of discretion. *In re A.N.*, Greene App. Nos. 2010 CA 83, 2011 CA 7, 2011-Ohio-2422, ¶21. An abuse of discretion does not exist unless a trial court's decision is "grossly unsound, unreasonable, illegal, or unsupported by the evidence." Id. We see no abuse of discretion here. Although the absence of L.M. and J.M. from P.C. and D.C.'s home is a change, not every change will support modifying a custody order. Id. at ¶23. The question is whether the change is one of substance that warrants a change of custody. Id.; see, also, *Gillum v. Gillum*, Montgomery App. No. 24401, 2011-Ohio-2558, ¶31.

{¶ 16} In support of its ruling, the trial court noted that A.J. had remained in P.C. and D.C.'s home. Unlike L.M. and J.M., who were uprooted and moved to the Cleveland area, A.J. continued to reside in the same environment where he had been since P.C. and D.C. originally obtained legal custody. Although L.M. and J.M. no longer resided with A.J., the trial court noted that he continued to have frequent contact with them, and it found no material impact on him. In light of these facts, we cannot say the trial court abused its discretion in finding no change of circumstances for A.J. Absent a change of circumstances, we need not address D.J.'s follow-up argument about a change of custody not being in A.J.'s best interest.[2] The first assignment of error is overruled.

---

[2] We note, too, that contrary to the assertion in D.J.'s appellate brief, the trial court never actually decided whether a change of custody would be in A.J.'s best interest. Because it found no change of circumstances, the trial court had no need to address the issue.

{¶ 17} In her second assignment of error, D.J. contends the trial court erred in applying a best-interest-of-the-child standard to determine whether she or M.M. and M.M. should be granted legal custody of L.M. and J.J. When deciding between herself and M.M. and M.M., D.J. claims the trial court was required to grant her legal custody absent evidence that she was then an unsuitable parent.

{¶ 18} We find D.J.'s argument to be without merit. Before awarding legal custody to a non-parent, a trial court ordinarily must make a finding that each parent is unsuitable. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, syllabus. This requirement does not apply, however, in cases involving abuse, neglect, or dependency. "A juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, syllabus. Thus, "[w]hen a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." Id.

{¶ 19} D.J. seeks to distinguish *In re C.R.* on the basis that it negated the need for an unsuitability determination *at the dispositional hearing*. As set forth above, the dispositional hearing in the present case long ago resulted in P.C. and D.C. receiving legal custody. The matter then returned to the trial court on competing requests by D.J. and M.M. and M.M. to modify the initial disposition by granting them legal custody. In this post-dispositional hearing context, D.J. asserts that *In re C.R.* does not apply and that M.M. and M.M., as non-parents, were required to establish her current unsuitability in order to obtain custody instead of her.

We disagree.

{¶ 20} Despite D.J.'s progress as a parent, the fact remains that the trial court previously adjudicated L.M. and J.J. abused and/or dependent based primarily on her drug addiction. As a result of that adjudication, the trial court retains jurisdiction over the children until they reach age eighteen. R.C. 2151.353(E)(1). In the exercise of its continuing jurisdiction, the trial court is permitted to change the legal custody order it entered at the dispositional hearing. The procedure for exercising this authority is delineated by statute. Under R.C. 2151.42(B), a trial court cannot modify or terminate a prior dispositional order awarding legal custody of an abused, neglected, or dependent child unless it finds "based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child." Notably, nothing in R.C. Chapter 2151 requires a non-parent to establish current parental unsuitability when seeking to modify a prior dispositional order in abuse, neglect, or dependency cases. As the Ohio Supreme Court has recognized, "no statute requires a finding of parental unfitness as a prerequisite to an award of legal custody in cases where a child is adjudged abused, neglected, or dependent." *In re C.R.*, ¶21. This remains true even when, as in the present case, a non-parent competes for legal custody against a biological mother after the initial dispositional order. *In re I.S., A.S., T.S., K.S.*, Summit App. No. 24763, 2009-Ohio-6432, ¶9-20. The fact that a parent implicitly found unsuitable by an abuse/dependent adjudication, may now be a suitable parent does not necessarily entitle her to regain legal custody of L.M. and J.J. *In re B.J.*, Hamilton App. No. C-081261,

2009-Ohio-6485, ¶3-26. Her second assignment of error is overruled.

{¶ 21} In her third assignment of error, D.J. claims the trial court erred in granting M.M. and M.M. legal custody of L.M. and J.J. when they never sought legal custody before the dispositional hearing.

{¶ 22} In support of her argument, D.J. first notes that once a child is adjudicated abused, neglected, or dependent, a trial court may award legal custody "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child * * *." R.C. 2151.353(A)(3). Here the dispositional hearing occurred long ago and resulted in P.C. and D.C. obtaining legal custody of L.M. and J.J. M.M. and M.M. did not seek legal custody until April 9, 2009, approximately two years later. Therefore, we agree that M.M. and M.M. do not fit within the scope of R.C. 2151.353.

{¶ 23} The controlling statute, however, is R.C. 2151.353(E)(2), which governs the modification or termination of dispositional orders issued under R.C. 2151.353(A). In relevant part, R.C. 2151.353(E)(2) provides: "Any public children services agency, any private child placing agency, the department of job and family services, *or any party*, other than any parent whose parental rights with respect to the child have been terminated pursuant to an order issued under division (A)(4) of this section*, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued pursuant to division (A) of this section*[.]" (Emphasis added).

{¶ 24} On appeal, D.J. insists that M.M. and M.M. do not fit within any of the categories mentioned in R.C. 2151.353(E)(2). In particular, she notes that they were not "parties" to the case because they did not participate in the original dispositional hearing.

Therefore, she contends M.M. and M.M. should not have been permitted to seek modification or termination of the prior order granting legal custody to P.C. and D.C.

{¶ 25} Although we do not dispute D.J.'s reading of R.C. 2151.353(E)(2), we disagree with her conclusion. As set forth above, in February and March 2009, D.J. and M.M. and M.M. filed competing "complaints" seeking legal custody of L.M. and J.J.[3] Because M.M. and M.M. were not parties to the case, however, they lacked the ability to seek modification or termination of the existing dispositional order under R.C. 2151.353(E)(2). The proper procedure would have been for them to obtain leave to intervene and then to move for legal custody of L.M. and J.J. *In Matter of Mouser*, Logan App. No. 8-04-34, 2005-Ohio-2244, ¶3-4. Effectively, that is what the court allowed.

{¶ 26} Although M.M. and M.M. failed to seek intervention, the record before us contains no objection by D.J. Her first reference to the issue that we have found is in a post-argument brief she submitted to the trial court just before it overruled her objections to the magistrate's decision. (Doc. #76 at 3). If D.J. wished to object to M.M. and M.M.'s participation below, the time to have done so was before the magistrate held an evidentiary hearing, when the absence of a motion for leave to intervene could have been remedied or, at a minimum, in her written objections to the magistrate's ruling. By participating in the evidentiary hearing without objecting, and by neglecting to raise the issue until shortly before the trial court ruled against her, D.J. waived any argument she may have possessed. Accordingly, her third assignment of error is overruled.

---

[3]Under R.C. 2151.353(E)(2), the technically correct procedure was to file motions seeking to modify or terminate the award of legal custody to P.C. and D.C. Despite the defect in form, the trial court properly treated the complaints as motions to modify or terminate the existing custody order. See, e.g., *In re Allah*, Hamilton App. No. C-040239, 2005-Ohio-1182, ¶8.

{¶ 27} In her fourth assignment of error, D.J. contends the trial court erred when it cited the "integration" of L.M. and J.J. into M.M. and M.M.'s home as a basis for awarding them legal custody.

{¶ 28} In support of her argument, D.J. relies on R.C. 3109.04(E)(1)(a), which provides:

{¶ 29} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

{¶ 30} "* * *

{¶ 31} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent."

{¶ 32} On appeal, D.J. notes that she never consented to L.M. and J.J. residing with M.M. and M.M. Because the two children were not integrated into M.M. and M.M.'s home with her consent, she contends R.C. 3109.04(E)(1)(a)(ii) was not satisfied.

{¶ 33} We find D.J.'s argument unpersuasive. As a preliminary matter, it is questionable whether R.C. 3109.04(E)(1)(a)(ii) was implicated in the present case. As set forth

above, the governing statute was R.C. 2151.353(E)(2), which applies to the modification or termination of dispositional orders in dependency, abuse, and neglect cases under R.C. 2151.353(A). D.J. points out, however, that another provision, R.C. 2151.23(F)(1), instructs a juvenile court "to exercise its jurisdiction in child custody matters in accordance with R.C. 3109.04[,]" which concerns the allocation of parental rights and responsibilities in divorce proceedings.

{¶ 34} The critical issue, which the parties have not addressed in any detail, is whether, pursuant to R.C. 2151.23(F)(1), a juvenile court making custody determinations in dependency, abuse, and neglect cases under R.C. 2151.353 always must apply all parts of R.C. 3109.04. The Ninth District Court of Appeals addressed this issue in detail in *In Matter of Rogers* (Dec. 30, 1994), Wayne App. No. 2894. Writing for the court, Judge Deborah Cook held that R.C. 3109.04 does not apply "to all situations in which a court makes a custody determination concerning an abused child."   In support, Judge Cook reasoned:

{¶ 35} "The [appellants] cite [*In re Poling* (1992), 64 Ohio St.3d 211,] for the proposition that juvenile courts must apply the requirements of R.C. 3109.04 in any case in which custody of a child is involved. The facts of that case, however, are clearly distinguishable from this one. First, we note that in *Poling,* as part of the parents' divorce decree, the court awarded custody to the mother pursuant to an earlier version of R.C. 3109.04. The children were later adjudicated dependent and placed with their father. The court eventually awarded custody of the children to the father. In considering the order granting custody to the father, the Supreme Court of Ohio held that the juvenile court erred in failing to consider the requirements of R.C. 3109.04 in accordance with R.C. 2151.23(F)(1). As part of

its determination, the Court explained:

**{¶ 36}** "'[W]hen a domestic relations court or common pleas court makes a custody decision ancillary to a divorce proceeding, that court must comply with the strictures contained in R.C. 3109.04. Likewise, under R.C. 2151.23(F)(1), a juvenile court must consider the dictates of R.C. 3109.04 when exercising its custody jurisdiction. The juvenile court's custody decision is thus harmonized with the prior custody determination by the requirement in R.C. 2151.23(F)(1) * * *.' *Poling*, 64 Ohio St.3d at 216.

**{¶ 37}** "In this case, we do not have a prior custody determination made as part of a divorce decree. In fact, the domestic relations court declined to award custody as part of Rogers and Hershberger's divorce because proceedings concerning Cody's abuse had already begun. The language of R.C. 3109.04 clearly refers to situations in which custody is being or has been considered as part of divorce proceedings, while the provisions of R.C. 2151.353 speak directly to the type of 'custody' determinations made in this case.

**{¶ 38}** " * * * As the domestic relations court declined to allocate parental rights in accordance with R.C. 3109.04 as part of Rogers and Hershberger's divorce, the concern for harmony between the standard applied by the domestic relations court and the juvenile court is not present as it was in *Poling*. Moreover, a finding that R.C. 2151.23(F)(1) requires juvenile courts to apply R.C. 3109.04 in all 'custody' cases involving abused children would mean that a statute tailored to divorce situations would be applied in cases where the parents of the abused child are not divorced. We decline to embrace such an interpretation."

**{¶ 39}** Upon review, we find the Ninth District's reasoning persuasive. Although R.C. 2151.23(F)(1) broadly instructs a juvenile court to apply R.C. 3109.04 in "child custody

matters," the specific provision upon which D.J. relies, R.C. 3109.04(E)(1)(a)(ii), cannot readily be applied here. It precludes a court from modifying a prior decree allocating "parental rights" unless "[t]he child, with the consent of the residential parent * * * has been integrated into the family of the person seeking to become the residential parent." D.J. contends this means she was required to consent to L.M. and J.J. residing with M.M. and M.M. But D.J. was not the children's "residential parent." Although she is the biological mother, she lacked custody, and the children did not reside with her. Nor did P.C. and D.C. or M.M. and M.M. qualify as "residential parents." Although P.C. and D.C. had legal custody, neither they nor M.M. and M.M. are the children's parents. Simply put, there *is no* "residential parent" who could consent to the integration of L.M. and J.A. into M.M. and M.M.'s home. Thus, we question the applicability of R.C. 3109.04(E)(1)(a)(ii).[4]

{¶ 40} Assuming, arguendo, that R.C. 3109.04(E)(1)(a)(ii) did apply here by analogy, we conclude that P.C. and D.C. were more analogous to "residential parents" than D.J. Prior to residing with M.M. and M.M., L.M. and J.J. lived with P.C. and D.C., who had legal custody of them. "'Legal custody' means a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(A)(19).

---

[4] D.J. cites *Myers v. Mantia* (June 22, 1994), Miami App. No. 93-CA-44, for the proposition that a residential parent's consent to his or her child being integrated into a non-custodial parent's home is required by R.C. 3109.04(E)(1)(a)(ii). We do not disagree. We note, however, that *Myers* involved a motion for a change of custody between parents in a divorce case. As explained above, the present situation is distinguishable because it is a dependency, abuse, and neglect case involving a parent and non-parents.

{¶ 41} Although the phrase "residential parent" is not defined by statute, it has been interpreted similarly. *Fisher   v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶23. Insofar as P.C. and D.C. became equivalent to residential parents when they acquired legal custody of L.M. and J.J., they did not lose that status simply by sending the children to live with M.M. and M.M. *Myers v. Mantia* (June 22, 1994), Miami App. No. 93-CA-44, n.1 ("We note that here, Ms. Myers is considered the residential parent under the statute. The fact that her son lived with Mr. Mantia does not convert Mr. Mantia into the residential parent[.]"). Therefore, even if the "residential parents" were required to consent to the integration of L.M. and J.J. into M.M. and M.M.'s home, the record reflects the existence of such consent. P.C. and D.C., the closest analog to "residential parents" here, did consent to the integration of L.M. and J.J. into M.M. and M.M.'s family. Accordingly, the fourth assignment of error is overruled.

{¶ 42} In her final assignment of error, D.J. claims the trial court erred in finding that an award of legal custody to M.M. and M.M. was in the best interest of L.M. and J.J. In support, D.J. stresses that she is the biological mother and that she desires custody. She also contends that most of the children's relatives live in her area.  D.J. additionally argues that she would be more likely to facilitate visitation. Finally, she asserts that M.M., the paternal uncle, was convicted of domestic violence in 2001 for an incident involving his brother, that he drinks, and that he has a child of his own who experiences anger problems. According to D.J., the foregoing considerations demonstrate that the trial court erred in finding an award of legal custody to M.M. and M.M. to be in the best interest of L.M. and J.J. We disagree.

{¶ 43} "[T]he weighing necessarily involved in making the determination of a child's best interest necessarily clothes the trial court with substantial discretion in making that

determination, and the proper standard for review of that decision is abuse of discretion." *In re K.H.*, Clark App. No. 2009-CA-80, 2010-Ohio-1609, ¶66. We see no abuse of discretion here. M.M.'s domestic violence conviction is now ten years old. The record does not reflect that he has been in any legal trouble since then. We note, too, that the biological child with anger issues no longer resides in M.M.'s home. In granting legal custody to M.M. and M.M., the trial court found that L.M. and J.J. had become "fully integrated" into their family, which includes two other young children. L.M. and J.J. refer to M.M. as "mom." Moreover, the trial court noted that M.M. and M.M. are providing for the special needs of L.M. and J.J. and have established a college fund for them. The trial court found that, until recently, D.J. was a "total stranger" to L.M. and J.J., who still refer to her as "the toy lady." Having reviewed the record, we see no abuse of discretion in the trial court's finding that it was in the best interest of L.M. and J.J. for M.M. and M.M. to have legal custody. Accordingly, D.J.'s fifth assignment of error is overruled.

**{¶ 44}** The judgment of the Greene County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . .

FAIN and DONOVAN, JJ, concur.

Copies mailed to:

Cynthia A. Lennon
David M. McNamee
David R. Miles
Hon. Robert W. Hutcheson