[Cite as *In re L.V.*, 2012-Ohio-5871.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE L.V.

C.A. No.     26245

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN-09-03-269

DECISION AND JOURNAL ENTRY

Dated: December 12, 2012

---

CARR, Judge.

{¶1}    Appellant, Melissa S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division. This Court affirms.

I.

{¶2}    This case involves Mother's request for the transfer of legal custody of L.V., born on November 19, 1996, from her father, Antonio V. ("Father"), to her. Before the present case began, L.V.'s parents reportedly engaged in extensive litigation regarding their daughter's custody, and they most recently shared parenting of her. In March 2009, the child was hospitalized with psychiatric symptoms. As a consequence of that hospitalization, Summit County Children Services Board ("CSB") filed a dependency complaint in juvenile court. The complaint alleged that the parents caused the child to suffer emotional trauma through their extensive conflict over her custody, each trying to prove the other was unfit to care for her. L.V. was said to have been diagnosed with Factitious Disorder Pediatric. The professionals described

an overly enmeshed relationship between L.V. and Mother that was without age-appropriate boundaries. L.V.'s therapist, Dr. Danielle Gurion, described the diagnosis as one where "the condition for the mother's love for [L.V.] was . . . her resenting and rejecting her father." The prevailing theory of the professionals involved in the case was that L.V. was greatly harmed by and did regress in her therapy following any contact by Mother outside of their supervised visitation.

{¶3} In May 2009, L.V. was adjudicated to be dependent upon stipulation of the parties, and, in July 2009, she was placed in the legal custody of Father with protective supervision in CSB. Mother withdrew her own motion for legal custody. A case plan was adopted. Mother, Father, and L.V. were each to engage in counseling. Mother was granted one hour of supervised visitation weekly and, otherwise, was to have no contact whatsoever with L.V. In mid-2010, Mother engaged in unauthorized contact with L.V. in violation of the court's order. She was found to be in contempt and her visitation privileges were suspended. Mother's unauthorized contact was considered to have contributed to L.V's running away from home and to have caused a regression in her therapy. Early in 2011, the court reinstituted one hour of supervised visitation weekly.

{¶4} In September 2011, the case came on for hearing on a number of motions. Of relevance to this appeal is Mother's motion for a transfer of legal custody to her or, in the alternative, for increased visitation. Following the hearing, the trial court denied Mother's motion for legal custody and continued legal custody of L.V. in Father. The judge increased Mother's visitation and gave L.V. the option of inviting Mother to occasional school functions. Mother has appealed from the judgment and has assigned three errors for review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR LEGAL CUSTODY AS THE TRIAL COURT'S RULING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶5}   Mother has argued that the denial of her motion for legal custody was not supported by the evidence adduced at trial.  Her argument focuses largely on her claim that the trial court erroneously permitted evidence of alleged mental disorders as proof of her inability to parent L.V.

{¶6}   Mother claims that two 2009 orders by the magistrate directed that such evidence should have been excluded at the 2011 hearing.  In May 2009, the magistrate ordered that references to suspicion of Munchausen by Proxy on the part of Mother be deleted from the complaint.  This was apparently done as a predicate to accomplishing a stipulation to the dependency of L.V.  The complaint continued to include a reference to L.V.'s diagnosis of Factitious Disorder Pediatric.  In addition, following the first day of testimony in the 2009 dispositional hearing, the magistrate sought to expedite matters by avoiding the unnecessary repetition of an issue that had already been adjudicated: "that [L.V.] suffers from mother's procurement of unwarranted medical services for her."  Therefore, the magistrate ordered the parties to limit future testimony to dispositional issues, and she ordered that no further testimony regarding the child's disorder will be permitted "to corroborate or refute the disorder."

{¶7}   On appeal, Mother lists 30 pages from the transcript of the 2011 hearing that she claims demonstrate a violation of the court's orders.  Putting aside the fact that no objection was raised to any of these examples and that most were mere factual mentions rather than attempts at

persuasion, this argument is irrelevant to the issue at hand - whether there had been a change in the circumstances of the child or Father.

{¶8} Even before the commencement of the hearing in this case, the trial court advised Mother that in seeking a change of custody, she would be obligated to demonstrate a change of the circumstances of the child or the legal custodian. Pursuant to the plain language of R.C. 2151.42(B), applicable to modifications of dispositional orders within the context of dependent, neglect and abuse cases, the trial court "shall not" modify or terminate an order granting legal custody of a child unless it explicitly finds, based on facts that have arisen since the prior order or were unknown to the court at that time "that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child." R.C. 2151.42(B). These requirements exist "because some degree of permanence or finality is necessary in custody determinations." *In re J.S.*, 11th Dist. No. 2011-L-162, 2012-Ohio-4461, ¶ 27. *See also Davis v. Flickinger,* 77 Ohio St.3d 415, 418 (1997), quoting *Wyss v. Wyss,* 3 Ohio App.3d 412, 416 (10th Dist.1982) (finding that the intent of a comparable statute, R.C. 3109.04(E)(1)(a), is "'to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment.'").

{¶9} The trial court found that, despite lengthy testimony, Mother failed to present any evidence of a change in L.V.'s or Father's circumstances that would justify a modification or change of custody. To this point, Mother has advanced two claimed changes in circumstances on appeal in order to justify a transfer of custody to her. She argues that L.V. was a victim of

domestic violence by Father, apparently believing that he slapped her once on the back, and also argues that L.V. has improved with less treatment and medication while in Father's care.

{¶10} Not every change will support the modification of a custody order, but rather only a "change [that] is one of substance that warrants a change of custody." *In re L.M.,* 2d Dist. No. 2010-CA-76, 2011-Ohio-3285, ¶ 15. We conclude that the trial court did not err in finding that there was no such change of circumstance that warranted a change of custody.

{¶11} The record reveals the following as to Mother's two claimed changes in circumstances. First, L.V.'s therapist, Dr. Danielle Gurion, testified that L.V. told her that Father struck her once upon learning of an incident inspired by Mother's efforts to communicate with L.V. outside of supervised visitation. Dr. Gurion confronted Father and explained to him that L.V. was more stressed than he was, but did not contact CSB, because L.V. did not "make a big thing out of it," she said it had never happened before, and Dr. Gurion did not "at all" consider this to be physical abuse. Donald Badjun, the CSB caseworker, corroborated this view. Mr. Badjun explained that no other professionals conveyed to him or to anyone at CSB that L.V. claimed to be physically or emotionally abused at Father's home. Father's counselor of six years testified that he had no concerns about L.V.'s safety and well-being while in Father's care. No witness reported the matter to the police. None of the professionals, or the trial court, considered the claim to have any material impact.

{¶12} As to Mother's second claim, the evidence overwhelmingly supports a conclusion that L.V. made steady improvement while in Father's care, so long as her contact with Mother was limited to supervised visitations. L.V. regressed when she had contact with Mother outside of supervised visitation. This is not the sort of change that warrants a transfer of custody away from Father and to Mother. In light of these facts, we conclude the trial court did not err in

finding no change of circumstances that supports a transfer of custody. Mother's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT FAILED TO CONTINUE THE TRIAL UNTIL COUNSEL COULD RETURN TO REPRESENT MOTHER, OR DECLARE A MISTRIAL, IN LIGHT OF APPELLANT'S [ATTORNEY'S] ILLNESS AND WITHDRAWAL DURING TRIAL[.]

**{¶13}** Mother argues that the trial court deprived her of due process by denying her request to continue the hearing or to declare a mistrial when her attorney became ill during the hearing.

**{¶14}** In juvenile cases, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Juv.R. 23. The decision to grant or deny a continuance lies within the sound discretion of the trial judge, which requires a balancing of "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *Id.*, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

**{¶15}** "In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Unger*, at 67-68.

{¶16} The record reveals that this matter was scheduled to be heard on July 19, 2011. On July 6, 2011, Mother's counsel moved for a continuance and, alternatively, for leave to withdraw from representing Mother, due to his need to take pain medication for a virus. The magistrate denied the motion, but the juvenile court judge granted counsel's motion to set aside the order and granted a continuance until the first available date after July 19, 2011. The judge also indicated that no further continuances would be granted. The hearing was scheduled for September 27, 28, 29, and 30, 2011, a delay of two months, and to continue on October 7, 2011 and October 26, 2011, if necessary.

{¶17} The trial began with the juvenile court judge presiding, rather than the magistrate, in order to expedite the hearing of the case. Over the preceding two years, there had been several objections to decisions and motions to set aside orders of the magistrate with the accompanying necessary delay. The hearing proceeded, as scheduled, on September 27, 28, and 29, 2011. As the hearing began on September 30, 2011, Mother's counsel stated on the record that he did not feel well, but the hearing proceeded and one witness was completed. Thereupon, Mother's counsel asked for a continuance because he felt ill. He stated that he would make himself available as best he could. The hearing was adjourned. At that point, the hearing had gone on for more than four days and covered more than 700 pages of transcript.

{¶18} In apparent anticipation of continuing the hearing on the previously scheduled back-up date of October 7, 2011, Mother's counsel filed a written motion on October 6, 2011 to continue the hearing based on illness. He cited an upper respiratory infection, flu symptoms, and dehydration. He requested a continuance until October 26, 2011. The trial judge granted the motion for a continuance. By separate order, the hearing was again continued due to counsel's illness from October 26, 2011 until November 9 and November 10, 2011, nearly six weeks after

the hearing was initially halted. In so doing, the trial court wrote: "No further continuances will be granted. While the court is empathetic with counsel's health concerns, it is important, for the sake of this child, for this matter to be resolved." The trial judge advised counsel to have a back-up plan for coverage should he be unable to attend.

{¶19} On October 31, 2011, a new attorney was appointed as co-counsel to represent Mother. The new attorney filed a notice of appearance on November 3, 2011, and appeared in court on November 9, 2011, representing Mother for the conclusion of the hearing. There was no objection to proceeding at that time, no further requests for a continuance, and no motion for mistrial. Nor was there any indication of the current status of Mother's previous attorney or whether he might be able to return at any time in the future.

{¶20} Mother has argued that substitute counsel was deficient in representing her because he did not demand a hearing on her earlier request for an in camera interview of L.V., but Mother has not specifically explained her claim. It is not clear what purpose was to be served by having a hearing on the matter. The trial judge had consistently indicated her desire to conduct an in camera interview of L.V. and did, in fact, conduct such an interview. Mother has not demonstrated any prejudice in this regard.

{¶21} Mother also claims that substitute counsel was deficient in representing her for failing to object to the admission of impermissible character evidence. Mother's referenced list of allegedly improperly-admitted character evidence does not include any examples that occurred while the new attorney was representing her. Thus, neither claim advanced by Mother has merit.

{¶22} Given all the circumstances, including that this case involved a child custody determination that had already seen several delays and that the trial court had been most

accommodating in allowing at least two lengthy continuances for Mother's attorney, this Court concludes that the trial court did not abuse its discretion in proceeding as it did. Mother's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT FAILED TO CONDUCT AN IN CAMERA INTERVIEW OF MINOR CHILD L.V.

{¶23} Mother asserts that the trial court erred because it failed to conduct an in camera interview of L.V. Mother relies on R.C. 3109.04(B)(1) in suggesting that the trial court has a mandatory duty to conduct an in camera interview of a child upon request by a party in order to obtain input on the child's wishes as to custody. To the extent that this statute applies in a proceeding conducted pursuant to R.C. 2151.42(B), this Court concludes that the trial court acted reasonably and imputes no error to the trial court.

{¶24} The trial judge had input on the child's wishes from numerous counselors, therapists, the child's attorney, and the child's guardian ad litem. Prior to the hearing before the trial judge on Mother's motion to change legal custody, the magistrate had conducted at least one in camera interview of L.V. Another in camera interview was set to be conducted in January 2011 until both the guardian ad litem and the child's attorney withdrew their requests. The trial judge attempted to schedule an in camera interview of the child on the second day of the hearing, but was unable to do so when this nearly 15-year-old child, who had been questioned, interviewed, and examined at length throughout these proceedings, indicated "very strongly" through her attorney that she did not want to have another interview. At the close of testimony, however, and after the trial judge delivered a sincere explanation of her desire to meet with L.V. in open court, L.V. agreed to meet with the trial judge. That meeting was accomplished before the trial judge entered her order on visitation. As part of her final order, the trial judge scheduled

another in camera interview and a review hearing in 120 days to consider the impact of the visitation plan then put into effect. Mother's third assignment of error is overruled.

## III.

{¶25} Mother's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

RUSSELL A. BUZZELLI, Attorney at Law, for Appellant.

ALEXANDER R. FOLK, Attorney at Law, for Appellee.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

LINDA SELL, Guardian ad litem.

GINA D'AURELIO, Atttorney for Minor Child.