[Cite as *In re K.Y.*, 2013-Ohio-3039.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

IN THE MATTER OF:     :
            :  Appellate Case No. 2012-CA-71
   K.Y., A.Y., and B.Y. :
            :  Trial Court Nos.  2012-77
            :         2012-78
            :           2012-79
            :
            :  (Juvenile Appeal from
            :   Common Pleas Court)
            :
     . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of July, 2013.

. . . . . . . . . . .

LISA M. FANNIN, Atty. Reg. #0082337, Clark County Prosecutor's Office, 50 East Columbia Street, Post Office Box 1608, Springfield, Ohio 45501
   Attorney for Appellee, Clark County Dept. Of Job & Family

REBEKAH NEUHERZ, Atty. Reg. #0072093,  Neuherz Law Offices, LLC, 121 South Main Street, Urbana, Ohio 43078
   Attorney for Appellant, C.Y.

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1}  C.Y. appeals from an order of the Clark County Juvenile Court denying his motion for legal custody of his child, A.Y.  He contends that the court erred by applying the wrong statutory provisions regarding the best interests of the child.  He further contends that the

decision is not supported by the evidence.

{¶ 2}    We conclude that the trial court applied the correct statutory best-interest standards in making its custody decision.   We also conclude that there is evidence in the record to support the trial court's decision, and that the decision does not constitute an abuse of discretion.   Accordingly, the order of the juvenile court from which this appeal is taken is Affirmed.

## I.    The Course of Proceedings

{¶ 3}    A.S. is the natural mother of A.Y., who was born in 1999.   A.Y.'s father is C.Y. A.S. and C.Y. were never married.

{¶ 4}    Clark County Family and Children's Services (the Agency) became involved with A.S. in December 2011, following allegations that A.S.'s children were being sexually abused by A.S.'s live-in boyfriend.[1]   In early February, an "Agreed Order for Protective Supervision Order" was entered, in which the trial court found that A.Y. was dependent, pursuant to R.C. 2151.04(C).   This order was signed by the court, C.Y. and the prosecuting attorney on behalf of the Agency.   A.S. did not sign the document, and subsequently filed a motion to set aside the order.   Thereafter, C.Y. filed a motion for legal custody of A.Y.   A Court Appointed Special Advocate/ Guardian Ad Litem (CASA/GAL) filed a motion seeking to have A.Y. committed to the temporary custody of the Agency.

---

[1]    The underlying action involves four children and three separate fathers.    The other children and fathers are not parties to this appeal.

{¶ 5}    A hearing was held in August 2012.  Thereafter, on September 4, 2012, the juvenile court entered an order noting that the CASA/GAL had decided to forego the request for an award of temporary custody to the Agency.  The court further noted that the Agency merely sought an extension of the protective supervision order.  C.Y.'s motion for custody was denied.  The court ordered that A.Y. remain with A.S., but granted visitation to C.Y.  Finally, the juvenile court stated that pursuant to the agreement of the parties the Protective Supervision Order would be extended for a period of six months.[2]    C.Y. appeals from the order denying his motion for legal custody.

**II.   The Trial Court Did Not Err in Overruling C.Y.'s Motion for Legal Custody**

{¶ 6}    C.Y. presents the following as his sole assignment of error:

THE   TRIAL   COURT   ABUSED   ITS   DISCRETION   WHEN   IT DETERMINED THAT A CHANGE OF CUSTODY WAS NOT IN THE BEST INTEREST OF THE CHILD.

{¶ 7}    C.Y. contends that the juvenile court erred in finding that A.S. had been previously granted legal custody of A.Y.  He further contends that the court, based upon its incorrect finding of a prior allocation of parental rights and responsibilities, erred by applying the best-interest standards set forth in R.C. 3109.04 rather than the standards set forth in R.C. 2151.353.  Finally, he argues that even applying the best-interest standards set forth in R.C. 3109.04, the record demonstrates that his motion should have been granted.

---

[2]    We note that the trial court never explicitly ruled upon A.S.'s motion to set aside the February 8 "Agreed Order for Protective Supervision Order" in which it found that A.Y. was dependent.    Thus, we conclude that the motion was implicitly overruled with the entry of the September 4, 2012 order.

{¶ 8} We first determine whether there has been a prior custody proceeding with regard to A.Y. The juvenile court stated that "the request for legal custody by the father would necessitate a change of legal custody from an award of legal custody previously granted to the mother." The court further stated that "the mother was previously granted legal custody of the children. The fathers seek to modify the custodial relationship and request that they be granted custody of their respective daughters." C.Y. contends that this finding of a previous grant of legal custody is erroneous. In support, he states that "no evidence was presented at trial establishing any prior custodial proceeding between Mother and Appellant Father, and, as the parties were never married, there was no prior custodial decision as part of a divorce proceeding."

{¶ 9} We find nothing in the record to establish the existence of a prior decree allocating parental rights and responsibilities for the care of A.Y. The record does reflect that the Agency has had prior involvement with A.S. and her children. It is therefore possible that a prior case involved an allocation of parental rights, but there is nothing in the record of this appeal to so indicate. We therefore agree with C.Y. that the trial court erred in finding that A.S. had previously been awarded legal custody. But we conclude that this error did not prejudice C.Y., because, as will be shown herein, it did not adversely affect the trial court's consideration of A.Y.'s best interests.

{¶ 10} We next consider C.Y.'s argument that the juvenile court erred by applying the provisions of R.C. 3109.04. His argument is a bit hard to follow, but he appears to be claiming that the court erroneously applied the best-interest factors found in R.C. 3109.04(F). C.Y. cites *In the Matter of L.M., A.J. and J.J.*, 2d Dist. Greene No. 2010-CA-76, 2011-Ohio-3285, for the proposition that "revised code 3109.04 applies only in cases involved [sic] a custodial decision made as a part of a divorce proceeding."

{¶ 11} In that case, we did hold that a portion of R.C. 3109.04, specifically R.C. 3109.04(E)(1)(a)(ii), is not applicable to dependency, abuse and neglect cases. *Id.* at ¶ 39. That portion of the statute mandates that if a prior decree allocating parental rights and responsibilities exists, then the trial court cannot change the residential parent unless it finds that the child has been integrated into the family of the person seeking residential parent status and that such a change is in the best interest of the child. *Id.* We are not dealing with that portion of the statute in this case.

{¶ 12} The part of the statute, R.C. 3109.04(F)(1), upon which the juvenile court in this case relied merely sets forth the factors to use in determining the best interest of the child. This court has agreed that these best-interest factors are appropriate in determining motions for legal custody in abuse, dependency and neglect cases. *See In re J.W.*, 2d Dist. Greene No. 2009-CA-8, 2009-Ohio-4605.

{¶ 13} C.Y. argues that the juvenile court erred in its conclusion that these factors mandate retaining custody with the mother. Thus, we must determine whether the evidence supports the juvenile court's finding that awarding custody to C.Y. is not in A.Y.'s best interest. The best-interest factors set forth in R.C. 3109.04(F)(1) include:

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) The wishes and concerns of the child,
>
> (c) The child's interaction and relationship with the child's parents and siblings;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting

time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent has been convicted of or pleaded guilty to an offense of domestic violence or another criminal offense involving any act that resulted in the child being an abused or neglected child;

\* \* \*

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 14} Both parents want custody of A.Y. A.Y. wishes to spend equal time with her parents, as testified to by the CASA/GAL. The CASA/GAL recommended that A.Y. be permitted to spend "significant time" with each parent.

{¶ 15} The evidence shows that A.Y. is integrated into the home of her mother and that she is bonded to her mother as well as to her siblings. She has resided with her mother and siblings for the great majority of her life, excluding a six-month period when she and her siblings were placed in foster care. A.S. and the children live in a four-bedroom home, which is clean and "in excellent condition." A.Y. has her own bedroom. A.Y. has some mental health issues, including Bipolar Disorder, but appears to be receiving the necessary treatment for those issues. She is also receiving help at school through special education classes.

{¶ 16} A.S. appears to have some mental health issues, but appears to be taking medication for those issues. C.Y. has anger-control issues, for which he has received counseling.

He also has an extensive criminal history including theft, breaking and entering (for which he spent one year in prison), domestic violence, child endangering and various misdemeanor charges

{¶ 17}   A.S. has been employed for several years as a medical assistant.  She does not appear to have any physical ailments.

{¶ 18}   C.Y. testified that he has a debilitating, "crippling" disease that will eventually confine him to a wheelchair.  He has not worked for fifteen years, and is receiving Social Security Disability benefits in the amount of $698 per month.  He testified that he and his current wife have a membership at the local YMCA, where he plays basketball and exercises "three times a week."  He admitted that he has never paid any child support for A.Y.[3]  He further admitted that he has not complied with a support order regarding another child, who resides out of state.  He and his wife live in a one-bedroom apartment.

{¶ 19}   As noted by the juvenile court, both parents offer "an equally woeful environment" to the child.  We agree.  Specifically, A.S. has repeatedly failed to protect the children from abuse by A.S.'s various boyfriends.  While there have been allegations that A.Y. has been harmed by at least one of the boyfriends, the Agency failed to substantiate those allegations.  A.S. was charged with child endangering stemming from abuse of the child by a boyfriend, but it is not clear whether she was convicted thereof.  It does not appear that A.Y. was harmed by any of the other boyfriends.  However, A.Y. was previously injured by her own father, C.Y.,  while he was living in the home with A.S. and the children.  C.Y. was charged with child endangering, and according to the report of the CASA/GAL was convicted and sentenced to thirty days in jail

---

[3]   There is no evidence that C.Y. was ever subject to any child support order regarding A.Y.

{¶ 20} C.Y. contends that the court erred by placing too much weight on his failure to pay child support and too little weight on A.S.'s failure to protect the children from harm by her boyfriends. We disagree. The court merely noted, as part of the best-interest determination, that C.Y. had failed to support A.Y. in any manner, including the fact that he had failed to provide any kinds of gifts to A.Y. The court found this relevant to a finding that C.Y. had failed to express any love or concern for the child. The court further found that C.Y. has not "done much to demonstrate commitment, concern, and consistency in the [life of A.Y. and has not sought] to establish and enforce companionship rights for the past many years."

{¶ 21} Furthermore, we note that the court did put emphasis on A.S.'s history, and that "at one point" the court was almost convinced that the children should be removed from her care. As noted by the court, A.S. has "failed to protect the children from dangerous and unsavory men." The court also found that "the evidence presented indicates that the mother has the ability to protect the children and seemingly a desire to protect the children, but she has simply not been able to do so in the past." The court found that the evidence demonstrates that the mother is capable of taking care of the children and providing for their physical and emotional needs.

{¶ 22} C.Y. further contends that the court erred in finding that his housing was inadequate, even though the Agency indicated that his home is safe and appropriate. We disagree. While the evidence indicates that the home has no safety or cleanliness issues, it also shows that the home consists of a one-bedroom apartment, with no bedroom for A.Y. C.Y. and his wife testified that they could get a larger apartment if they receive custody of A.Y., but they did not offer any evidence to support this statement. Thus, we conclude that the court did not err in finding that C.Y.'s home is "marginal at best."

**{¶ 23}** The court noted that its decision was a difficult one. Both parents have exhibited failures in the care and protection of A.Y. However, the Agency and the CASA/GAL believe that the children can be kept safe by extending the term of the protective supervision. They offered no position regarding the custody dispute between the parents. The juvenile court, after hearing the testimony of all the parties, concluded that maintaining the status quo in terms of custody was the best path. We conclude that this determination does not constitute an abuse of discretion.

**{¶ 24}** We conclude that C.Y. has failed to demonstrate that the court abused its discretion or made erroneous findings with regard to his claim for custody. Accordingly, C.Y.'s sole assignment of error is overruled.

### III. Conclusion

**{¶ 25}** C.Y.'s sole assignment of error having been overruled, the order of the trial court denying C.Y.'s motion for an award of legal custody is Affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Lisa M. Fannin
Rebekah S. Neuherz
Hon. Joseph N. Monnin